FILED
COURT OF APPEALS
DIVISION II

2015 APR -7 AM 9: 23

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45401-7-II |
| Respondent, | |
| v. | |
| JAIME NMI SILVA-ARROYO, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — A jury found Jaime Silva-Arroyo guilty of attempted second degree rape. Silva-Arroyo appeals, arguing that (1) his conviction should be reversed because the prosecutor committed misconduct during closing argument and (2) certain community custody provisions should be stricken from his judgment and sentence because they are not crime related. The State concedes that the community custody provisions should be stricken. We find the prosecutor's comments were not improper and affirm Silva-Arroyo's conviction. And, we accept the State's concession and remand for the trial court to strike the improper community custody provisions.

## FACTS

On July 22, 2012, S.M.[1] was shopping at a local grocery store when she noticed a man, later identified as Silva-Arroyo, who appeared to be following her through the store. Leaving the

---

[1] We use initials to preserve the victim's privacy.

grocery store, S.M. went to another store in the same shopping center. After she left the second store, Silva-Arroyo walked up to her, said something in Spanish, and started rifling through his wallet. S.M. did not speak Spanish, so she motioned for him to leave her alone and walked away. S.M. began walking toward her house and turned down an alleyway.

While in the alleyway, Silva-Arroyo came up behind her and pushed her to the ground. Silva-Arroyo sat on top of her and held her down. Silva-Arroyo started hitting S.M., grabbed her throat, and tried pulling down S.M.'s pants. S.M. began screaming. Silva-Arroyo lifted his hand off of S.M.'s mouth and S.M. bit him. Silva-Arroyo got up and walked away. S.M. called her boyfriend and they went to her boyfriend's parents' house and called the police.

Bainbridge Island Police Officer Dale Johnson was the responding officer. When Johnson contacted S.M., he noticed that her lip was swollen, she had bruises on the side of her head, and she had scratches on her neck. Johnson went with S.M. to the scene of the attack and found a hat on the ground. S.M. identified the hat as the one Silva-Arroyo had been wearing during the attack. Officers were also able to obtain a surveillance video from the grocery store. The video showed Silva-Arroyo in the store.

Bainbridge Island Police Detective Michael Tovar was assigned to S.M.'s case. The day after he was assigned, Tovar saw Silva-Arroyo in the area of the grocery store, recognized Silva-Arroyo from the grocery store surveillance video, and stopped to talk to Silva-Arroyo. Later, Tovar showed S.M. a photo montage that included Silva-Arroyo's picture. S.M. identified Silva-Arroyo. When Tovar contacted Silva-Arroyo again, Tovar noticed an injury to Silva-Arroyo's hand which he believed to be a bite mark.

No. 45401-7-II

The State charged Silva-Arroyo with attempted second degree rape. At Silva-Arroyo's jury trial, S.M., Johnson, and Tovar testified to the facts above.

Silva-Arroyo presented a defense of general denial and argued that S.M. misidentified him as the perpetrator. Silva-Arroyo testified that he was at the shopping center the day of the assault. He testified that he went into the grocery store but realized that he had left his wallet at his brother's house. He left the grocery store and walked down the alleyway. He testified that he regularly used the alleyway to get to his brother's house. When he got halfway to his brother's house, he realized that he was going to be late for work, so he turned around and walked back toward the shopping center. He testified that he put his hat in his hip pocket when he left the grocery store, but he did not have it when he arrived at work. He also testified that he cut his hand while working as a dishwasher.

During closing argument, the prosecutor described S.M.'s attack as a woman's "worst nightmare." 3 Report of Proceedings (RP) (July 2, 2013) at 393. At the beginning of his argument, the prosecutor stated:

> This case represents every woman's worst nightmare. [S.M.] was alone. The defendant took advantage of it. The defendant assaulted her, and he tried to pull down her pants. It is every woman's worst nightmare.

3 RP (July 2, 2013) at 393. Later, the prosecutor referred to the attack as "every woman's worst nightmare" because it was an attack by a stranger. 3 RP (July 2, 2013) at 406. The prosecutor then went on to argue that because S.M. did not know Silva-Arroyo, she did not have a bias against him and contrasted that to Silva-Arroyo's witnesses, who were Silva-Arroyo's brother and sister. Silva-Arroyo did not object to the State's characterization of the attack.

3

Silva-Arroyo argued, in closing, that he provided innocent explanations for all of the State's evidence, and therefore, there was a reasonable doubt. In rebuttal argument, the prosecutor stated:

> The defense is giving you a lot of reasons. He is giving you a lot of explanations. And, you know, that is all to the good, but what he hasn't provided is reasonable doubt. You will—

3 RP (July 2, 2013) at 433-34. Silva-Arroyo objected immediately and the trial court excused the jury. Silva-Arroyo moved for a mistrial and argued that the prosecutor had improperly shifted the burden of proof to the defense. The trial court disagreed, ruling that the prosecutor's argument was a proper response to Silva-Arroyo's argument that Silva-Arroyo's explanations created a reasonable doubt. The trial court denied Silva-Arroyo's motion for a mistrial.

The jury found Silva-Arroyo guilty of attempted second degree rape. The trial court imposed a low end term of confinement within the standard range. The trial court also imposed several community custody provisions including prohibiting Silva-Arroyo from (1) contacting any children under the age of 18, (2) loitering or frequenting places where children congregate, and (3) entering into romantic relationships without prior permission from his community corrections officer. Silva-Arroyo appeals.

## ANALYSIS

A.  PROSECUTORIAL MISCONDUCT

Silva-Arroyo argues that the prosecutor committed misconduct by (1) improperly appealing to the passions and prejudices of the jury and (2) improperly shifting the burden of proof to the defendant. We disagree.

4

Silva-Arroyo failed to object to the prosecutor's comments that, allegedly, appealed to the passions and prejudices of the jury; but, Silva-Arroyo did object to the prosecutor's comments that allegedly shifted the burden of proof. Therefore, we apply two different standards for analyzing prosecutorial misconduct.

Regardless of whether the defendant objected to the alleged prosecutorial misconduct, the defendant must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012) (citing *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011)). First, this court determines if the prosecutor's conduct was improper. *Id.* at 759. Second, if this court determines that the prosecutor's conduct was improper, this court determines whether the prosecutor's improper conduct was prejudicial. *Id.* at 760-61.

1.     Appeal to Jury's Passions and Prejudices

First, Silva-Arroyo argues that the prosecutor improperly appealed to the jury's passions and prejudices by referring to S.M.'s attack as a "woman's worst nightmare." *See e.g.* 3 RP (July 2, 2013) at 393. Silva-Arroyo did not object to the prosecutor's comments.

If the defendant did not object at trial, this court considers any error waived, "unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured" any resulting prejudice. *Emery*, 174 Wn.2d at 760-61. "Under this heightened standard of review, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the verdict.'" *Id.* at 761 (quoting *Thorgerson*, 172 Wn.2d at 455).

No. 45401-7-II

Here, the prosecutor's comments regarding S.M.'s attack being a "woman's worst nightmare" were not improper. In closing argument, prosecutors are "afforded wide latitude to draw and express reasonable inferences from the evidence." *State v. Reed*, 168 Wn. App. 553, 577, 278 P.3d 203, *review denied*, 176 Wn.2d 1009 (2012). This court does not look at the comments in isolation, but "in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury." *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007), *cert. denied*, 554 U.S. 922 (2008) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)). "'The prosecutor should not use arguments calculated to inflame the passions and prejudices of the jury.'" *In re the Matter of the Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (quoting ABA, STANDARDS FOR CRIMINAL JUSTICE std. 3-5.8(c) (2d ed. 1980)). Instead, prosecutors "must 'seek convictions based only on probative evidence and sound reason.'" *Id.* (quoting *State v. Casteneda-Perez*, 61 Wn. App. 354, 363, 810 P.2d 74 (1991)).

Silva-Arroyo argues that the prosecutor's comment "was designed to scare the jurors into considering the possibility of rapists running free" and "served no other purpose than to scare the jurors into deciding the case based on their own personal fears rather than on the facts of the case." Br. of Appellant at 11. Silva-Arroyo specifically relies on *State v. Belgarde*, 110 Wn.2d 504, 755 P.2d 174 (1988) and *State v. Powell*, 62 Wn. App. 914, 816 P.2d 86 (1991), to support his assertion that the prosecutor committed reversible misconduct by referring to S.M.'s attack as a "woman's worst nightmare." Br. of Appellant at 11. Silva-Arroyo's reliance on these cases is misplaced.

6

In *Powell,* the prosecutor committed reversible misconduct by arguing that, if the jury acquitted the defendant, it would be sending a message that child victims would not be believed and, as a result, the jury would be declaring "open season" on children. 62 Wn. App. at 918-19. The prosecutor's argument was improper because the prosecutor was asking the jury to find the defendant guilty based on considering the effect of the verdict on child sex abuse victims. *Id.* And, the prosecutor was asking the jury to return a guilty verdict, not because the evidence established the defendant was guilty, but rather, because the jury needed to protect children. *Id.*

In *Belgarde,* the prosecutor told the jury that the defendant was a member of a group which the prosecutor described as "a deadly group of madmen" and "butchers that kill indiscriminately." 110 Wn.2d at 508. The prosecutor's comments were improper because they were calculated to revolt the jury. *Id.* And, the prosecutor was attempting to secure a conviction based on the defendant's association with a group rather than the evidence presented at trial. *Id.*

Here, the prosecutor did not argue that the jury should find the defendant guilty *because* S.M.'s attack was a "woman's worst nightmare." And, the prosecutor did not ask the jury to find the defendant guilty in order to prevent other women from suffering the same "nightmare." The prosecutor's comment was primarily related to arguing that S.M. was a credible witness because she had no investment in testifying that Silva-Arroyo was the person who attacked her. The prosecutor's comment that S.M.'s attack was a "woman's worst nightmare" was not an argument calculated to inflame the passions and prejudices of the jury. Rather, it was a minor comment within an argument during which the prosecutor continuously encouraged the jury to find Silva-Arroyo guilty based on the evidence presented at trial. Therefore, we hold that the prosecutor did not make an improper comment.

2.      Burden Shifting

Silva-Arroyo also argues that the prosecutor committed misconduct by improperly shifting the burden of proof to the defense. Silva-Arroyo objected to the prosecutor's argument; therefore, he must show improper conduct and prejudice resulting from the improper conduct. *Emery*, 174 Wn.2d at 760-61. Here, we need not determine whether the prosecutor's comment was improper because Silva-Arroyo fails to show a substantial likelihood that the prosecutor's conduct affected the jury's verdict. *Id.* at 760.

There was substantial testimonial and physical evidence presented at trial. S.M. testified about what occurred, and Silva-Arroyo's testimony placed him in the vicinity of the incident. There was physical evidence corroborating S.M.'s testimony as to what happened, including a surveillance video placing Silva-Arroyo at the scene, Silva-Arroyo's hat found at the scene, S.M.'s injuries, and Silva-Arroyo's injuries. In light of the evidence presented, we hold the prosecutor's fleeting comment did not prejudice Silva-Arroyo, and Silva-Arroyo's prosecutorial misconduct claim fails.

B.      COMMUNITY CUSTODY PROVISIONS

Silva-Arroyo also argues that the trial court erred by imposing three specific community custody provisions: (1) a provision prohibiting Silva-Arroyo from having unsupervised contact with minors, (2) a provision prohibiting Silva-Arroyo from frequenting or loitering in places where children are known to congregate, and (3) a provision prohibiting Silva-Arroyo from entering into a consensual relationship without prior permission from his community custody officer.

Specifically, Silva-Arroyo argues that the provisions are improper because they are not crime related. The State concedes that the community custody provisions are improper. We accept the State's concession and remand to the trial court to strike the improper community custody conditions.

Under RCW 9.94A.703(3)(f), the trial court may require the defendant to "comply with any crime-related prohibitions." A crime-related prohibition is "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). This court reviews the trial court's imposition of crime-related prohibitions for an abuse of discretion. *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).

Here, there is no evidence that Silva-Arroyo's crime involved minors in any way. Therefore, prohibitions involving contact with minors are not crime-related. The trial court abused its discretion by imposing community custody provisions prohibiting contact with minors and prohibiting Silva-Arroyo from frequenting or loitering in places where minors are known to congregate.

And, there is no evidence that Silva-Arroyo's crime was related to a consensual relationship. S.M. was a stranger to Silva-Arroyo. Therefore, prohibiting Silva-Arroyo from entering into a consensual relationship without prior permission from his community custody officer was not crime-related. The trial court abused its discretion by imposing a community custody provision prohibiting Silva-Arroyo from entering into a consensual relationship without prior permission from his community custody officer.

No. 45401-7-II

The State's concession is proper. Accordingly, we affirm Silva-Arroyo's conviction, but remand to the trial court to strike the improper community custody provisions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Melnick, J.