# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58414-0-II |
| Respondent, | |
| v. | |
| JAYAIRUS JOSHUA JOHNSON, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Jayairus Joshua Johnson appeals his conviction for robbery in the second degree. Johnson argues that the State's reference to a puzzle analogy, the term "whodunit," and the game of Clue allegedly shifted the burden of proof to Johnson and trivialized the role of the jury. To that end, Johnson claims the State's actions amounted to prosecutorial misconduct, denying him the right to a fair trial protected by the Sixth and Fourteenth Amendments of the United States Constitution and article I, section 22 of the Washington State Constitution. Because the State's comments were not improper or Johnson waived review, we affirm Johnson's conviction.

## FACTS

### I.      BACKGROUND

In October 2022, Asha McMullen was walking in Illahee State Park. McMullen frequented the park after she moved to Bremerton. McMullen was by herself, talking on the phone as she walked to the waterfront. Before reaching the water, a maroon sport utility vehicle (SUV) abruptly

stopped at an intersection in close proximity to McMullen. A Black man, wearing a Seahawks hoodie, sweatpants, "a gaiter over his face," and reflective sunglasses, jumped out of the vehicle and demanded McMullen give him all of her belongings. 5 Rep. of Proc. (RP) at 1184. McMullen complied with the demand and gave the man her backpack, which contained her sweatshirt and keys for a rental car. The man also tried to take McMullen's cell phone but was unsuccessful. After the encounter, the man "walked back to the car, and drove away." 5 RP at 1189.

McMullen called 911 just after the man left. Deputies Joseph Ring and David Wolner responded shortly thereafter. After interviewing McMullen, Ring drove around the area in search of "a maroon SUV with a decorative Seattle Seahawks plate on the front." 4 RP at 817. Wolner observed a vehicle matching that description pass his patrol car while he was taking McMullen back to her apartment. After receiving this information from Wolner, Ring drove to the general location where the vehicle was spotted. After a few minutes had passed, Ring saw a Black male matching the general description McMullen provided walking alongside the street. Ring stopped the man, later identified as Johnson, and had Wolner drive by so McMullen could attempt to identify him. McMullen could not positively identify Johnson as the man who took her items, so Ring let him leave.

Ring found the vehicle used in the robbery shortly after his encounter with Johnson. Ring notified his colleagues that he found the vehicle at issue. Sergeant Brandon Myers, who was patrolling in the area, drove toward Ring's location. While Myers was en route, he encountered Johnson walking alongside the street. Myers stopped Johnson and proceeded to ask him questions

about the robbery. After Myers described the maroon SUV, Johnson explained that "he had located that vehicle at the Illahee State Park about an hour prior and that it was left on his property." 4 RP at 999. Johnson also "indicate[d] it was his vehicle." 4 RP at 999. Myers ultimately searched Johnson and found car keys "for a Toyota style vehicle." 4 RP at 1000. Johnson was taken into custody and read his *Miranda*[1] rights.

Ring obtained a search warrant and accessed the maroon SUV with the keys obtained by Myers. Ring retrieved what was later determined to be McMullen's backpack, which also contained her personal items, including the keys to her rental car. Ring also found "a green bandana gaiter," a "dark blue colored Seahawks jersey," several pairs of sunglasses, and an iPad. 4 RP at 836.

The State charged Johnson with robbery in the second degree in violation of RCW 9A.56.210(1) and RCW 9A.56.190.

II.    TRIAL

During voir dire, the State questioned prospective jurors about their understanding of direct and circumstantial evidence. During this exchange, the State analogized circumstantial evidence to a jigsaw puzzle.

> [PROSECUTOR]: Okay. Juror Number—I'll start with someone new. Juror Number 2, have you ever done a jigsaw puzzle?
> PROSPECTIVE JUROR 2: Oh, yeah.
> [PROSECUTOR]: Oh yeah. Who in this room has done a jigsaw puzzle? When you do a jigsaw puzzle, Juror Number 23, when you look at one piece, do you know what it is, and where it goes, what's the fit?
> PROSPECTIVE JUROR 23: No. It's part of the bigger picture.
> [PROSECUTOR]: Right. So when you do it, do you just look at every piece and say, "I don't know; throw it away?" . . . Or is it putting the whole picture together to get you the answer?
> PROSPECTIVE JUROR 23: It's putting the whole picture together to get to the answer.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3 RP at 530-31. Shortly after, Johnson objected, arguing this exchange amounted to prosecutorial misconduct.[2] Outside of the jury's presence, Johnson, based on prior case law, urged the court to prevent any similar analogies to be used during voir dire. The State countered, explaining that Johnson's assertion was an inaccurate statement of law. The State presented that it was "not talking about the burden of proof at all"; rather, it was "talking about using circumstantial evidence and the separate things to reach a conclusion from that." 3 RP at 536. The State added that "even if [it] were to use that puzzle to talk about the burden of proof, it is permissible." 3 RP at 536. The court overruled the objection, advising the State that it should move on from the line of discussion and continue with the proceedings.

At the conclusion of the State's opening statement, there was another reference to puzzle pieces. The State commented:

> Ladies and gentlemen of the jury, during this trial, it's a criminal trial, I have the burden of proof. That means it's my duty to prove this case beyond a reasonable doubt. I embrace that burden. When all of the evidence is presented, all of the puzzle pieces are given to you, you will have to decide if I met it. The evidence will establish [Johnson] targeted and robbed Asha McMullen as she tried to go on a morning walk. Convict him for his crime.

4 RP at 757-58.

Prior to closing arguments, the court correctly instructed the jury on the relevant law.[3] The State, during its closing, reintroduced the puzzle analogy. After discussing the facts of the case, the State commented:

---

[2] Specifically, Johnson stated that "[i]t is not permissible . . . to discuss cases or burdens of proof as they relate to puzzles" during closing argument. 3 RP at 532.

[3] Specifically, the court instructed the jury on the State's burden of proof, the defendant's presumed innocence, and that that State had to prove every element of the offense beyond a reasonable doubt.

[PROSECUTOR]:  Those are the puzzle pieces to work with.
[JOHNSON]: Objection, Your Honor.
THE COURT:  Overruled.
[PROSECUTOR]:  It's not much of a whodunit.

5 RP at 1281.

At another point, the State referenced the jigsaw analogy for circumstantial evidence presented during voir dire.  The exchange is as follows:

[PROSECUTOR]:  And we talked a lot in voir dire about the jigsaw and circumstantial evidence—
[JOHNSON]:  Objection, Your Honor.
THE COURT:  Overruled.
[PROSECUTOR]:  —and how, when you are looking at the evidence, you don't just look at one piece.  Because we have talked a lot about all of the different [indiscernible].  It's right to say every one piece by itself doesn't mean much.
. . . .
[PROSECUTOR]:  And you should use all of this evidence like puzzle pieces and put it together to create the full picture of what happened.

5 RP at 1286-88.  Johnson objected again, requesting to address the court outside the jury's presence.  Raising similar points, Johnson explained that the State's conduct was improper, emphasizing that "puzzle analogies should not be used."  5 RP at 1290.  In defense of its analogy, the State argued that it was "addressing the use of circumstantial evidence," noting that "[e]vidence should be considered as a whole."  5 RP at 1290.  The court overruled the objection.  Johnson requested, and the court granted, a standing objection to the use of the puzzle analogy to avoid further interruption.[4]

During rebuttal, the State remarked that it had "the burden of proof.  [And that the] weight of this case [was on its] shoulders," emphasizing that Johnson didn't have to prove anything; the State did.  5 RP at 1302.  The State later questioned "[h]ow could [Johnson] have ended up with the stolen items and the robber's disguise if he wasn't involved in the robbery?"  5 RP at 1302.

---

[4] Defense counsel specifically objected to the "puzzle piece analogy," not the use of "whodunit."

The State went on to comment, "I want to stress one word for you: Reasonable. Because this case is simple. It's a whodunit, but it isn't Clue."[5] 5 RP at 1302. Using the "whodunit" reference again, the State noted that Johnson "was smart enough to hide his face after the robbery and change shirts. . . . That's why it's a whodunit. But it isn't much of one."[6] 5 RP at 1303. And before concluding, the State instructed the jury to "[p]iece the evidence together like a puzzle, follow it, and if you reach the abiding belief that [Johnson] committed this crime, go ahead and convict him of the crime." 5 RP at 1306.

The jury found Johnson guilty of robbery in the second degree. Johnson moved to dismiss the case or declare a mistrial based on the State's alleged misconduct. The court denied Johnson's motion. Johnson was ultimately sentenced to 14 months of confinement and 18 months of community custody.

Johnson appeals.

ANALYSIS

I.  THE STATE'S COMMENTS REGARDING PUZZLE PIECES AND "WHODUNIT" DID NOT AMOUNT TO PROSECUTORIAL MISCONDUCT

A criminal defendant has a constitutional right to a fair trial. U.S. CONST. amend. VI, XIV; WASH. CONST. art. I, § 22. As quasi-judicial officers, prosecutors "have a duty to ensure that defendants receive a fair trial." *State v. Fuller*, 169 Wn. App. 797, 812, 282 P.3d 126 (2012). Consequently, prosecutorial misconduct may deprive a defendant of this right. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012).

---

[5] This was the only reference to the game of Clue throughout all proceedings.

[6] Defense counsel did not object to the State's use of "whodunit" at any point of the trial.

When a defendant demonstrates a prosecutor's conduct was improper, we engage in one of two standards of review. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). If the defendant fails to object at trial, "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id.* at 760-61. This more stringent standard of review requires the defendant to show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). Alternatively, if the defendant objects at trial, "the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *Id.* at 760.

"[T]he question is whether there is a substantial likelihood that the instances of misconduct affected the jury's verdict." *Glasmann*, 175 Wn.2d at 711. We review the prosecutor's conduct in the context of the entire case. *Thorgerson*, 172 Wn.2d at 443. And we presume that the jury follows the court's instructions. *State v. Stein*, 144 Wn.2d 236, 247, 27 P.3d 184 (2001).

Prosecutors have "wide latitude to argue reasonable inferences from the evidence," but they must "'seek convictions based only on probative evidence and sound reason.'" *Glasmann*, 175 Wn.2d at 704 (quoting *State v. Casteneda-Perez*, 61 Wn. App. 354, 363, 810 P.2d 74 (1991)). To that end, there are several limitations on a prosecutor's conduct at trial. For example, prosecutors "'should not use arguments calculated to inflame the passions or prejudices of the

jury.'" *Id.* (quoting AM. BAR ASS'N, STANDARDS FOR CRIMINAL JUSTICE stds. 3-5.8(c) (2d ed. 1980)). Also, a prosecutor may not misstate the law or its burden to establish a defendant's guilt beyond a reasonable doubt. *State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014); *State v. Allen*, 182 Wn.2d 364, 374, 341 P.3d 268 (2015).

A.      Puzzle & Jigsaw Pieces

Johnson argues the State's analogy of puzzle and jigsaw pieces constituted misconduct. We disagree.

This court has addressed the use of puzzle analogies on several occasions. *See State v. Johnson*, 158 Wn. App. 677, 682, 684-85, 243 P.3d 936 (2010); *State v. Curtiss*, 161 Wn. App. 673, 698-702, 250 P.3d 496 (2011); *Fuller*, 169 Wn. App. at 811, 823-28. In *Johnson*, the State, during closing argument, explained, "[y]ou add a third piece of the puzzle, and at this point even being able to see *only half*, you can be assured beyond a reasonable doubt that this is going to be a picture of Tacoma." 158 Wn. App. at 682 (emphasis added). We held that this was improper because discussing "the reasonable doubt standard in the context of making an affirmative decision based on a partially completed puzzle trivialized the State's burden, focused on the degree of certainty the jurors needed to act, and implied that the jury had a duty to convict without a reason not to do so." *Id.* at 685.

In *Curtiss*, we held that the puzzle analogy was not improper. 161 Wn. App. at 700-01. In that case, the State, when discussing the burden of proof in closing argument, commented:

> [R]easonable doubt is not magic. This is not an impossible standard. Imagine, if you will, a giant jigsaw puzzle of the Tacoma Dome. There will come a time when you're putting that puzzle together, and even with pieces missing, you'll be able to say, with some certainty, beyond a reasonable doubt what that puzzle is: The Tacoma Dome.

*Id.* at 700. Without referencing *Johnson*, we explained that, in context, the State was describing the relationship between circumstantial evidence, direct evidence, and the standard of proof, without shifting the burden to the defendant. *Id*. And unlike *State v. Anderson*, 153 Wn. App. 417, 220 P.3d 1273 (2009), "the State's comments about *identifying* the puzzle with certainty before it is complete [was] not analogous to the weighing of competing interest inherent in a *choice* that individuals make in their everyday lives."[7] *Curtiss*, 161 Wn. App. at 701 (emphasis in the original).

We came to a similar outcome in *Fuller*. 169 Wn. App. at 823-28. In that case, the State, also during closing argument, made several remarks about puzzles. *Id.* at 825. They include:

> What I am going to do now is use a jigsaw puzzle to illustrate the concept of beyond a reasonable doubt. Let's say that someone is telling us that this is a picture of Tacoma. We get a few of the pieces of the puzzle. We get a few pieces of evidence and this is what we can see. From that we might think it looks like Tacoma, but we don't know—
>  . . . .
> So we look at that portion of the puzzle and we do not have enough pieces or enough evidence beyond a reasonable doubt that it's pieces of Tacoma. But let's say we get some more pieces. Now, we have more pieces, more evidence that suggests this is Tacoma. But we may not yet have enough pieces, enough evidence to know beyond a reasonable doubt that it's Tacoma.
> Now, we have more pieces. We have more evidence and we can see beyond a reasonable doubt that this is a picture of Tacoma. We can see the freeway. We can see Mount Rainier and we can see the Tacoma Dome.
> A trial is very much like a jigsaw puzzle. It's not like a mystery novel or [the *Crime Scene Investigation* television series (CSI)] or a movie. You're not going to have every loose end tied up and every question answer[ed]. What matters is this: Do you have enough pieces of the puzzle? Do you have enough evidence to believe beyond a reasonable doubt that the defendant is guilty?

---

[7] In *Anderson*, the State commented, among other things, "beyond a reasonable doubt is a standard that you apply every single day. . . . [For example, in choosing to have] elective surgery, . . . [you] might get a second opinion. You might be worried, do I really need it? If you go ahead and do it, you were convinced beyond a reasonable doubt." 153 Wn. App. at 425. The court found this comment to be improper because it "minimized the importance of the reasonable doubt standard and . . . the jury's role in determining whether the State had met its burden." *Id.* at 431.

*Id.* (footnote omitted) (alterations in the original). We reasoned that "the State neither equated its burden to making an everyday choice nor quantified the level of certainty necessary to satisfy" the burden of proof. *Id.* at 827. This fact, in addition to the jury being correctly instructed about the burden of proof, resulted in the State's comments not amounting to misconduct. *Id.* at 828.

In *Lindsay*, our Supreme Court concluded the State's remarks were improper. 180 Wn.2d at 434-36. In *Lindsay*, the State, during closing argument, announced:

> [O]ne of the simplest [ways to explain reasonable doubt] is the idea of a jigsaw puzzle. . . . [T]he first thing you do is you get all the pieces that have edges on them, start to lock them together, you're trying to get the outline. . . . [Y]ou put a few more pieces in . . . and you start to get a better idea of what that picture is. . . . And then you put in about 10 more pieces and see this picture of the Space Needle. Now, you can be halfway done with that puzzle and you know beyond a reasonable doubt that it's Seattle. You could have 50 percent of those puzzle pieces missing and you know it's Seattle.

*Id.* at 434. The court took issue with this comment because it quantified the burden of proof rather than suggesting "that one could be certain of the picture beyond a reasonable doubt even with some pieces missing." *Id.* at 436. Critically, the court did not proscribe the use of puzzle and or jigsaw piece analogies when discussing the burden of proof.[8] *Id.* at 434-36.

---

[8] Johnson cites to *United States v. Bradley*, 917 F.3d 493, 507-08 (6th Cir. 2019), for the proposition that the use of "a puzzle analogy can be improper even without any explicit quantification." Br. of Appellant at 12-13. Federal circuit precedent is not binding on this court. *See State v. Pippin*, 200 Wn. App. 826, 836-37, 403 P.3d 907 (2017) ("[W]e *may* utilize well-reasoned, persuasive authority from federal courts and sister jurisdictions to resolve a question.") (emphasis added). Because we conclude that our state authorities permit the puzzle analogy on the particular facts before us, we will not read the persuasive Sixth Circuit authority to reject our state authorities on this issue.

Here, Johnson objected to the State's use of the puzzle analogy throughout the trial. Therefore, he need not overcome waiver and we review his claim to determine whether the prosecutor's remarks were improper and, if so, whether the remarks "resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *Emery*, 174 Wn.2d at 760. Johnson does not make this showing.

The alleged misconduct took place during both voir dire, opening statements, and closing argument. Existing precedent does not address the issue during voir dire, only closing argument. *Johnson*, 158 Wn. App. at 682; *Curtiss*, 161 Wn. App. at 700-01; *Fuller*, 169 Wn. App. at 823-28; *Lindsay*, 180 Wn.2d at 434-36. It stands to reason, however, that holdings from existing precedent would be applicable here. *See State v. Zamora*, 199 Wn.2d 698, 711-12, 512 P.3d 512 (2022) ("[W]hat occurs during voir dire is equally as important as what occurs during trial proceedings. Voir dire is a significant aspect of trial because it allows parties to secure their Sixth Amendment and article 1, section 22 right to a fair and impartial jury through juror questioning.").

Contrary to Johnson's protestations, the State's reliance on the puzzle analogy, on these facts, was not improper. Unlike *Johnson* or *Lindsay*, the State did not quantify or trivialize the burden of proof by analogizing the case to a puzzle or jigsaw pieces. *Johnson*, 158 Wn. App. at 682; *Lindsay*, 180 Wn.2d at 434-36. Rather, in all points of the trial, the State relied on the example to explain the importance of considering all of the evidence to see the larger picture. The State also emphasized that it was not using the analogy to discuss the burden of proof, even though that would have been permissible based on the substance of its comments here.[9] *See Fuller*, 169 Wn. App. at 823-28. Like *Fuller*, the State acknowledged that it had the burden to prove all elements

---

[9] During rebuttal, for example, the State said, "[p]iece the evidence together like a puzzle, follow it, and if you reach the abiding belief that the defendant committed this crime, go ahead and convict [Johnson] of this crime." 5 RP at 1306.

of the crime beyond a reasonable doubt.[10]  169 Wn. App. at 828-29.  The jury was also correctly instructed by the court, which emphasized the gravity of the proceedings.  *See Fuller*, 169 Wn. App. at 828-29.  In context, these remarks did not amount to misconduct.[11]

Therefore, we conclude that the State's use of the puzzle piece analogy did not constitute misconduct.

B.        "Whodunit" & the Game of Clue

Johnson argues the State's use of the term "whodunit" and "Clue" during closing argument constituted misconduct.  We disagree.

The State used the term "whodunit"[12] three times during closing argument.  The State referenced the game of Clue once during closing argument.  Unlike the puzzle analogy, Johnson did not object to the use of either term.[13]

Assuming without deciding that each of these remarks were improper, Johnson waives these claims unless he demonstrates that the "misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."  *Emery*, 174 Wn.2d at 760-61.  On these facts, Johnson does not overcome this hurdle.

---

[10] Specifically, during rebuttal, the State explained that it had "the burden of proof.  [And that the] weight of this case [was on its] shoulders," emphasizing that Johnson didn't have to prove anything; the State did.  5 RP at 1302.

[11] Because we conclude that the State's comments were not improper, we need not address whether they "resulted in prejudice that had a substantial likelihood of affecting the jury's verdict."  *Emery*, 174 Wn.2d at 760.

[12] "Whodunit" is a noun, defined as "a detective story or a mystery story."  MERRIAM-WEBSTER UNABRIDGED DICTIONARY, https://unabridged. merriam-webster.com/unabridged/whodunit (last visited Feb. 20, 2025).

[13] Johnson raised a standing objection to avoid repeated interruptions during closing argument, but defense counsel specifically stated that it was directed towards the State's "puzzle piece analogy." 5 RP at 1292.

The State's use of the term "whodunit" was not "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id*. Like with the State's use of the puzzle analogy, the State did not misstate the burden of proof when using the term "whodunit." As the State explained, the use of the term was in light of the fact that the suspect's face was covered, requiring the jury to rely on circumstantial evidence to infer identity. And importantly, the State also acknowledged its burden, and the court correctly instructed the jury. Accordingly, the use of the term "whodunit," if improper, could have been resolved by a curative instruction.

The State's reference to the boardgame of "Clue" was also not "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id*. To be clear, the State did not compare Johnson's case to the game of Clue. When questioning how Johnson could not be involved in the crime, even though he had the stolen items in his possession, the State commented, "I want to stress one word for you: Reasonable. Because this case is simple. It's a whodunit, *but it isn't Clue*." 5 RP at 1302 (emphasis added). Even if it was improper, the singular, fleeting reference to the game of Clue was de minimis and could have been resolved by a curative instruction.[14]

Therefore, we conclude Johnson's claim regarding the State's use of "whodunit" and "Clue" during closing argument is waived.

---

[14] On a different set of facts, analogizing the case to a game of Clue could be improper because it would trivialize the State's burden of proof. *See Johnson*, 158 Wn. App. at 682.

CONCLUSION

Accordingly, we affirm Johnson's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Cruser, C.J.

_____
Che, J.