220 P.3d 1273 (2009)
153 Wash.App. 417
STATE OF WASHINGTON, Respondent,
v.
DANIEL ANDERSON, Appellant.
No. 37325-4-II.
Court of Appeals of Washington, Division 2.
December 8, 2009.
*1276 Kathryn A. Russell Selk, Russell Selk Law Office, Seattle, WA, for Appellant.
Melody M. Crick, Pierce County Prosecuting Attorney, Tacoma, WA, for Respondent.

OPINION PUBLISHED IN PART
PENOYAR, A.C.J.
¶ 1 Daniel Anderson appeals his first degree robbery conviction, arguing that (1) the prosecutor committed misconduct by misstating the law, improperly shifting the burden of proof to him, and stating his personal opinions about the witnesses' credibility and Anderson's guilt, and (2) he was denied effective assistance of counsel. In a statement of additional grounds for review (SAG),[1] Anderson also argues that (1) the trial court erred by miscalculating his offender score; (2) there is insufficient evidence to support the jury's finding that he used force to obtain or retain property under RCW 9A.56.190; and (3) the trial court erred by denying his request for bail pending this appeal. We affirm.

FACTS

I. Background
¶ 2 On the morning of August 21, 2007, Anderson entered a Tacoma Save A Lot grocery store. Store manager Joe Michael and produce department manager David Storaasli watched on the store's surveillance system as Anderson placed a bottle of hot sauce in his coat pocket and attempted to conceal cheese, eggs, and a packet of corn muffin mix.[2] Michael and Storaasli then observed *1277 Anderson walk past the check stand without paying for the items. When Michael confronted Anderson, Anderson ran toward the exit doors. When Michael and Storaasli chased after him, Anderson ran into and broke open the doors.
¶ 3 According to Michael, Anderson "started swinging" at Storaasli. 2 Report of Proceedings (RP) at 66. At some point, Anderson managed to "land one" on Michael. 2 RP at 105. When Michael attempted to subdue him, Anderson said, "Mother fucker, I got a gun."[3] 2 RP at 67. Then, according to both men, Anderson stated, "I got a knife," as he attempted to get away. 2 RP at 69, 81, 106. Anderson shook Michael off of him, at which point Michael landed on his back and cracked both his elbow and his knee on the concrete sidewalk. As Michael fell to the ground, the items concealed in Anderson's coat spilled onto the sidewalk.[4] Anderson, however, never let go of the money he held in his hand. Michael then got up, grabbed Anderson from behind, and "chicken-winged" his arms behind his back. 2 RP at 71. Michael and Storaasli subdued him for a few moments when Anderson broke free and bit Storaasli on the arm. Storaasli also sustained some minor scrapes and bruises during the scuffle.
¶ 4 When meat department manager Ronald Jones arrived outside, Michael began yelling that Anderson had a gun. In an attempt to assist the men, Jones tripped the whole "pile" of them in order to get them onto the ground. 2 RP at 140. At some point, Anderson looked directly at Jones and stated, "I got a knife. I'll fucking cut you." 2 RP at 150. During the course of the altercation, Jones separated his shoulder and cut his hand. Customer Roy Judd witnessed the men struggle and, at some point, also heard Anderson yell that he had a knife and a gun. By the time police arrived,[5] Michael, Storaasli, and Jones had again subdued Anderson by pinning him to the ground.
¶ 5 Anderson later stated that, although he initially decided not to pay for the items, he changed his mind before leaving the store. Anderson claimed that before he was able to return the items, however, he saw two men run toward him. Alarmed and unaware that the men were store employees, Anderson ran. Anderson recalled that the items concealed in his jacket fell to the ground when one of the men tackled him. He claimed that he bit someone because he was fearful and trying to break free from the scuffle. Anderson denied that he threatened anyone with a knife or a gun, and he denied that he fought back.
¶ 6 The next day, the State charged Anderson with one count of first degree robbery while armed with a deadly weapon. On October 29, the State filed an amended information adding one count of second degree assault.[6]

II. Trial
¶ 7 At trial, during closing arguments, the prosecutor explained to the jury:
[T]he purpose of closing argument [is] to take the facts that you heard from the witness stand and fill in the law as it has now been given to you.
The goal of closing argument is to point you toward a just verdict; not just a verdict, but a just verdict....
4 RP at 308-09. At this point, defense counsel objected to the prosecutor's use of the word "just." 4 RP at 309.
¶ 8 The trial court responded, "I'm going to allow it. It is closing argument." 4 RP at 309. The prosecutor continued:
Lesser offenses, Theft in the Third Degree and Assault in the Fourth Degree, in this case, would not be justice.
The word "verdict" comes from the Latin word "veredictum," which means to *1278 declare the truth. So, by your verdict in this case, you will declare the truth about what happened on August the 21 st of 2007 at the Save A Lot....
4 RP at 309. Defense counsel again objected to the prosecutor's use of the phrase "declaring the truth." 4 RP at 309. The trial court overruled this objection, again stating, "It is argument." 4 RP at 309.
¶ 9 Turning to the State's burden of proof, the prosecutor explained:
The burden of proof in a criminal case is beyond a reasonable doubt. It is the highest burden of proof that we put on any party in our court system. It's a burden of proof the State accepts, willingly accepts, and has met and exceeded in this case.
The instruction that defines beyond a reasonable doubt is important both for what it says and for what it does not say.
4 RP at 326-27. He then continued:
"[B]eyond a reasonable doubt" is not a phrase that you folks use in your daily lives. You don't get up and say, "I'm convinced beyond a reasonable doubt that I'm going to have Cheerios for breakfast." But, it is a standard that you apply every single day.
A reasonable doubt is one for which a reason exists. That means, in order to find the defendant not guilty, you have to say "I don't believe the defendant is guilty because," and then you have to fill in the blank. It is not something made up. It is something real, with a reason to it.
A reasonable doubt can arise from the evidence or from the lack of evidence.
4 RP at 327-28.
¶ 10 The prosecutor then explained that "a reasonable doubt arising from the evidence would be if the store employees came in here and said, `That isn't the guy.'" 4 RP at 328. On the other hand, a "reasonable doubt arising from the lack of evidence," the prosecutor continued, "is simply a question of do you have enough." 4 RP at 328. He then stated:
The question of beyond a reasonable doubt is: Do you have enough? And the defendant did everything he could to try and create reasonable doubt by his testimony, but his testimony was so preposterous that you ought to reject it in its entirety.... And, so, beyond a reasonable doubt is a standard that you apply every single day.... [For example, in choosing to have] elective surgery, dental surgery, [you] might get a second opinion. You might be worried, do I really need it? If you go ahead and do it, you were convinced beyond a reasonable doubt.
4 RP at 328-29.
¶ 11 The prosecutor subsequently gave other examples of situations in which the jurors might be convinced beyond a reasonable doubt to make a decision: when leaving their children with a babysitter or changing lanes on the freeway. Defense counsel neither objected nor requested a curative instruction during this time.
¶ 12 Again reminding the jurors that their job was to "[d]eclare the truth," the prosecutor concluded:
Folks, the truth of what happened is the only thing that really matters in this case. If you water down the defendant's conduct to Robbery in the Second Degree or to Theft in the Third Degree, is that really doing justice?
4 RP at 330, 353. Defense counsel objected again to the prosecutor's use of the phrase "doing justice," which the trial court overruled. 4 RP at 353. The prosecutor then concluded:
is that really doing justice? You took an oath to do your duty to declare a verdict according to the evidence you heard and the law of the State. These facts, this law, Robbery [in the] First Degree for the threatened use of a weapon and the infliction of bodily injury; Assault in the Second Degree for the infliction of temporary but substantial disfigurement, that's the truth of what happened August 21st from the evidence that you were presented. And that's the verdict that I would ask you to return in this case.
4 RP at 353-54.

III. Jury Instructions
¶ 13 Before deliberations, the trial court gave the following instruction:
The defendant has entered a plea of not guilty. That plea puts in issue every element *1279 of each crime charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists.
A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.
Clerk's Papers (CP) at 55; see 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 4.01, at 85-87 (3d ed.2008) (WPIC).
¶ 14 It also instructed the jury:
You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness.
The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.
CP at 53; see WPIC 1.02, at 13-16.
¶ 15 On November 27, a jury found Anderson guilty on both counts. It also found that Anderson committed the robbery by inflicting bodily injury and that he had not displayed a weapon. The trial court sentenced Anderson on January 23, 2008.[7] Determining that Anderson's offender score was a three, the trial court sentenced him to 61 months of confinement. Anderson now appeals.

ANALYSIS

I. Prosecutorial Misconduct
¶ 16 Anderson raises several claims of prosecutorial misconduct. Where the defense claims prosecutorial misconduct, it bears the burden of establishing the impropriety of the prosecuting attorney's comments as well as their prejudicial effect. State v. Brown, 132 Wash.2d 529, 561, 940 P.2d 546 (1997).
¶ 17 We review a prosecuting attorney's allegedly improper remarks in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. State v. Russell, 125 Wash.2d 24, 85-86, 882 P.2d 747 (1994). In determining whether prosecutorial misconduct occurred, we first evaluate whether the prosecutor's comments were improper. State v. Reed, 102 Wash.2d 140, 145, 684 P.2d 699 (1984). If the statements were improper, and an objection was lodged, we then consider whether there was a substantial likelihood that the statements affected the jury. Reed, 102 Wash.2d at 145, 684 P.2d 699. Absent a proper objection and a request for a curative instruction, however, the defense waives the issue of misconduct unless the comment was so flagrant or ill intentioned that an instruction could not have cured the prejudice. State v. Charlton, 90 Wash.2d 657, 661, 585 P.2d 142 (1978).
¶ 18 The State is generally afforded wide latitude in making arguments to the jury and prosecutors are allowed to draw reasonable inferences from the evidence. State v. Gregory, 158 Wash.2d 759, 860, 147 P.3d 1201 (2006) (citing State v. Gentry, 125 Wash.2d 570, 641, 888 P.2d 1105 (1995)). The State is entitled to comment upon the quality and quantity of evidence the defense presents. Gregory, 158 Wash.2d at 860, 147 P.3d 1201. Such argument does not necessarily suggest that the burden of proof rests with the defense. Gregory, 158 Wash.2d at 860, 147 P.3d 1201. A prosecutor may commit misconduct if he mentions in closing argument that the defense did not present witnesses or explain the factual basis of the charges or if the prosecutor states that the *1280 jury should find the defendant guilty simply because he did not present evidence to support his defense theory. See State v. Traweek, 43 Wash.App. 99, 106-07, 715 P.2d 1148 (1986), overruled on other grounds by State v. Blair, 117 Wash.2d 479, 816 P.2d 718 (1991).
¶ 19 Furthermore, a prosecutor's expressions of personal opinion about the defendant's guilt or the witnesses' credibility are improper. State v. Dhaliwal, 150 Wash.2d 559, 577-78, 79 P.3d 432 (2003). To determine whether the prosecutor is expressing a personal opinion about the defendant's guilt, independent of the evidence, we view the challenged comments in context. State v. McKenzie, 157 Wash.2d 44, 53, 134 P.3d 221 (2006).
¶ 20 Moreover,
[i]t is not uncommon for statements to be made in final arguments which, standing alone, sound like an expression of personal opinion. However, when judged in the light of the total argument, ... it is usually apparent that counsel is trying to convince the jury of certain ultimate facts and conclusions to be drawn from the evidence. Prejudicial error does not occur until such time as it is clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion.

McKenzie, 157 Wash.2d at 53-54, 134 P.3d 221 (emphasis in original) (quoting State v. Papadopoulos, 34 Wash.App. 397, 400, 662 P.2d 59 (1983)). Finally, we presume the jury follows the trial court's instructions. State v. Hopson, 113 Wash.2d 273, 287, 778 P.2d 1014 (1989).

A. Comments to Which the Defense Objected
¶ 21 Anderson argues that the prosecutor's calls to the jury to "declare the truth" and return a "just verdict," all of which the defense objected to, misstated the State's role and diluted its constitutional burden. Appellant's Br. at 32, 35. The State responds that the prosecutor's statements "indicated the [jury's] need to be careful in their consideration of the evidence" and that "the purpose in reaching a verdict was to declare what happened" on the date in question. Resp't's Br. at 17. The prosecutor's comments regarding "doing justice" were not improper because they were clearly made in the context of jury instructions that explained what "justice" would be in this case. 4 RP at 330, 353.
¶ 22 The prosecutor's repeated requests that the jury "declare the truth," however, were improper. A jury's job is not to "solve" a case. It is not, as the State claims, to "declare what happened on the day in question." Resp't's Br. at 17. Rather, the jury's duty is to determine whether the State has proved its allegations against a defendant beyond a reasonable doubt. However, examining this improper argument in the context of jury instructions that clearly lay out the jury's actual duties and of thorough discussion of the evidence by both counsel during argument, we find that Anderson has not demonstrated that there is a substantial likelihood that this misconduct, to which the defendant timely objected, affected the verdict. A new trial is not warranted here.

B. Comments to Which the Defense Did Not Object
¶ 23 Anderson also argues that the prosecutor committed "serious, prejudicial and constitutionally offensive misconduct" and violated his right to a fair trial by repeatedly misstating and minimizing the State's burden of proof and by shifting the burden to him. Appellant's Br. at 15. The State responds that the prosecutor neither misstated nor minimized its burden. While some of the prosecutor's arguments were problematic, we do not find that they were flagrant or ill intentioned; therefore, Anderson has waived these issues on appeal.
¶ 24 Again, we review a prosecutor's alleged improper remarks in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. Russell, 125 Wash.2d at 85-86, 882 P.2d 747. We find many of the comments the prosecutor made proper. The prosecutor correctly stated that the burden of proof in a criminal case is beyond a reasonable doubt and that it "is the highest burden of proof that we put on any party in our court system." 4 RP at 326. He then explained, "It's a burden of proof *1281 the State accepts, willingly accepts, and has met and exceeded in this case." 4 RP at 326-27.
¶ 25 The prosecutor's statements that a "reasonable doubt" is one for which a reason exists, were also not inaccurate. In fact, the trial court's instructions to the jury only reiterated this concept: "A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence." CP at 55. The prosecutor explained that "a reasonable doubt arising from the evidence would be if the store employees came in here and said, `That isn't the guy.'" 4 RP at 328. "A reasonable doubt arising from the lack of evidence," the prosecutor continued, "is simply a question of do you have enough." 4 RP at 328. These statements were proper.
¶ 26 Also proper were the comments Anderson argues constituted the prosecutor's opinions about both the witnesses' credibility and his guilt. In particular, Anderson argues that the prosecutor's comments characterizing his testimony as "made up on the fly," "ridiculous," and "utterly and completely preposterous," constituted "serious" and "prejudicial" conduct. Appellant's Br. at 30, 31-32. He also questions the propriety of the prosecutor's statement that the State's witnesses were "just telling the truth." Appellant's Br. at 31.
¶ 27 It is clear that the prosecutor in this case did not express personal opinions about either Anderson's guilt or the witnesses' credibility. Viewed in context, the prosecutor's statements were intended to clarify the law and argue inferences from the evidence. They were not, as Anderson argues, statements conveying personal opinions about the case. Furthermore, the trial court specifically instructed the jurors that they were the sole judges of credibility and that the lawyers' remarks, statements, and arguments were intended to help them understand the evidence and apply the law.
¶ 28 We find, however, some of the prosecutor's comments to be improper. The prosecutor's statement that "in order to find the defendant not guilty, you have to say `I don't believe the defendant is guilty because,' and then you have to fill in the blank," was improper. 4 RP at 327-28. The jury need not engage in any such thought process. By implying that the jury had to find a reason in order to find Anderson not guilty, the prosecutor made it seem as though the jury had to find Anderson guilty unless it could come up with a reason not to. Because we begin with a presumption of innocence, this implication that the jury had an initial affirmative duty to convict was improper. Furthermore, this argument implied that Anderson was responsible for supplying such a reason to the jury in order to avoid conviction.
¶ 29 The prosecutor's comments discussing the reasonable doubt standard in the context of everyday decision making were also improper because they minimized the importance of the reasonable doubt standard and of the jury's role in determining whether the State has met its burden. By comparing the certainty required to convict with the certainty people often require when they make everyday decisionsboth important decisions and relatively minor onesthe prosecutor trivialized and ultimately failed to convey the gravity of the State's burden and the jury's role in assessing its case against Anderson. This was improper.
¶ 30 Finally, during closing, the prosecutor discussed common decisions in which one might choose to act or refrain from acting, focusing on the degree of certainty the jurors would have to be willing to act, rather than that which would cause them to hesitate to act. These comments were also improper because they confused the jury's duty to find Anderson not guilty unless the State proved its case against him beyond a reasonable doubt with the idea that it should convict him unless it found a reason not to. This essentially amounted to an invitation to the jury to render a decision based on a standard less than what is constitutionally required.
¶ 31 Despite the impropriety of these comments, however, Anderson failed to object below and has failed to demonstrate that these comments were so flagrant or ill intentioned that an instruction could not have cured the prejudice. The trial court's instructions regarding the presumption of innocence minimized any negative impact on *1282 the jury. Again, we presume the jury follows the trial court's instructions.[8]Hopson, 113 Wash.2d at 287, 778 P.2d 1014.
¶ 32 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HUNT and QUINN-BRINTNALL, JJ.
QUINN-BRINTNALL, J. (concurring in the result).
¶ 33 I concur with the majority in affirming Daniel Anderson's first degree robbery conviction. I write separately only to emphasize the impropriety of the prosecutor's closing argument and to note that Washington has long recognized the "in order to find the defendant not guilty" argument as flagrant and ill-intentioned. 4 Report of Proceedings (RP) at 327; see State v. Stenson, 132 Wash.2d 668, 719, 940 P.2d 1239 (1997), cert. denied, 523 U.S. 1008, 118 S.Ct. 1193, 140 L.Ed.2d 323 (1998); State v. Fleming, 83 Wash.App. 209, 213, 921 P.2d 1076 (1996), review denied, 131 Wash.2d 1018, 936 P.2d 417 (1997).
¶ 34 In 1996, Division One of this court disapproved of the prosecutor's remarks to the jury when the prosecutor stated in closing argument, "for you to find the defendants... not guilty of the crime ..., you would have to find either that [the victim] has lied about what occurred ... or that she was confused." Fleming, 83 Wash.App. at 213, 921 P.2d 1076 (emphasis omitted). The court held that the prosecutor "misstated the law and misrepresented both the role of the jury and the burden of proof." Fleming, 83 Wash.App. at 213, 921 P.2d 1076. Division One made clear that under the presumption of innocence, a jury need not find that the victim or witness was mistaken or lying in order to acquit; instead, it is required to acquit unless it is convinced beyond a reasonable doubt of the defendant's guilt. Fleming, 83 Wash.App. at 213, 921 P.2d 1076.
¶ 35 More disturbing here, as in Fleming, during oral argument before the appellate court, the State argued that these statements did not constitute misconduct. But the State is wrong. Misstating the basis on which a jury can acquit insidiously shifts the requirement that the State prove the defendant's guilt beyond a reasonable doubt. Fleming, 83 Wash.App. at 213, 921 P.2d 1076. It is improper to suggest to the jury that it need do anything to find the defendant not guilty. Jurors are required on their oath to find the defendant not guilty unless they have individually been convinced of the defendant's guilt beyond a reasonable doubt. Importantly, Fleming was not the first case to emphasize that it is improper to present an argument of the "in order to find the defendant not guilty" form. See 4 RP at 327. The Fleming court stated, "We note that this improper argument was made over two years after the opinion in [State v.] Casteneda-Perez, [61 Wash.App. 354, 362-63, 810 P.2d 74 (questioning witnesses as to whether another witness is lying is improper and contrary to a prosecutor's duty to seek convictions based only on probative evidence and sound reason), review denied, 118 Wash.2d 1007, 822 P.2d 287 (1991)]. We therefore deem it to be a flagrant and ill-intentioned violation of the rules governing a prosecutor's conduct at trial." 83 Wash.App. at 214, 921 P.2d 1076. Nearly two decades have passed since Casteneda-Perez and a dozen years since Fleming. It is disheartening that this improper argument form has cropped up again. And that, despite the clear statement of the law in cases such as Fleming, this burden-shifting *1283 tactic is being presented as proper argument to this court.
¶ 36 But for the fact that Anderson was caught on videotape robbing the Tacoma Save A Lot grocery store, the prosecutor's flagrant misstatements of the burden of proof in closing argument would have deprived the defendant of a fair trial. Given the videotape, however, the evidence of Anderson's guilt was overwhelming and any reasonable juror would have returned a verdict finding him guilty of first degree robbery. Accordingly, I join the majority in affirming Anderson's conviction.
NOTES
[1] RAP 10.10.
[2] Michael later testified that Anderson entered the store holding money in his hand, a "telltale sign" that someone is preparing to shoplift items. 2 RP at 49. Storaasli agreed, stating, "When you walk in with money in your hand, you're showing someone you have money. I consider that a sign...." 2 RP at 99. Furthermore, Storaasli explained, Anderson's clothing, mannerisms, and the way he walked into the store also alerted him that "something [didn't] seem right about [him]." 2 RP at 101.
[3] Michael testified that Anderson stated this as he first attempted to wrestle him to the floor; Storaasli testified that this occurred the second time the two men managed to pin Anderson down.
[4] Storaasli testified that the items fell out of Anderson's coat when he initially starting swinging at the men.
[5] A grocery clerk called 911 after observing the altercation outside.
[6] The State subsequently filed a second amended information correcting the names of store employees listed in the first information.
[7] The trial court vacated the second degree assault charge.
[8] Even if we had found that the prosecutor's improper comments to which defense counsel did not object were flagrant or ill intentioned, any error was harmless under both the "substantial likelihood" standard and the constitutional harmless error standard. In this case, the untainted evidence against Anderson was overwhelming. Multiple store employees testified that Anderson entered the store, stole the items, attempted to escape, and used force against store employees as he attempted to flee the premises. The trial court admitted surveillance footage confirming this version of events. Anderson's assertion that the prosecutor's conduct tainted all of this evidence is without merit. The jury assessed the witnesses' credibility and determined that the State's witnesses were more credible than Anderson. Credibility determinations are for the trier of fact and are not subject to review on appeal. State v. Thomas, 150 Wash.2d 821, 874, 83 P.3d 970 (2004) (citing State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990)).