FILED
COURT OF APPEALS
DIVISION II

2015 MAY -5 AM 9: 27

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>        Respondent,<br><br>v.<br><br>MICHAEL DON OLMSTED,<br><br>        Appellant. | No. 45260-0-II<br><br><br><br><br>UNPUBLISHED OPINION |

JOHANSON, C.J. — Michael Don Olmsted appeals his jury trial conviction for second degree assault (domestic violence) and his life sentence under the Persistent Offender Accountability Act (POAA).[1] He argues that (1) the prosecutor committed reversible misconduct in closing argument by trivializing the burden of proof, vouching for the victim's credibility, and arguing facts not in evidence, (2) the trial court violated his right to public trial by having the parties exercise their peremptory challenges on paper, (3) he was denied his right to a jury determination by a reasonable doubt of whether he had two prior strike offenses under the POAA, and (4) the sentencing court erred by including a facially invalid 1994 second degree assault conviction in his criminal history and using this conviction as a strike offense. We hold that (1) Olmsted either waived his prosecutorial misconduct claims or failed to prove that the prosecutor's

---

[1] RCW 9.94A.570.

arguments were improper, (2) the trial court did not violate Olmsted's public trial rights by having the parties exercise their peremptory challenges on paper, (3) Olmsted was not entitled to a jury determination of his strike offenses, and (4) Olmsted fails to establish that his 1994 conviction was constitutionally invalid on its face. Accordingly, we affirm his conviction and his sentence.

FACTS

I. BACKGROUND

In the early morning hours of February 1, 2013, Olmsted assaulted his girlfriend, Amy Yeager, in their home. Yeager left on foot to seek medical attention at a nearby urgent care clinic. Olmsted followed her, yelling at her until she reached the clinic.

While following Yeager, Olmsted walked by a car occupied by Lukas Garrett McNett. Olmsted approached the car, cupped his hands against the car's tinted windows, and started yelling profanities at McNett. McNett, who did not know Olmsted, called 911 after Olmsted walked away. McNett later testified that he had never seen anyone so angry and characterized Olmsted as "raging." 2 Report of Proceedings (RP) at 164.

After confronting McNett, Olmsted continued to follow Yeager. Afraid to use her phone while Olmsted could see her, Yeager did not call 911 until she arrived at the clinic and found a pay phone that could not be seen from outside the building.

The responding officers first contacted Olmsted. They noticed that he had a "very pronounced limp," and he told them that his "balls hurt." 2 RP at 173. When the officers asked Olmsted if he was in pain because he had been in an altercation, he responded that he had not been and that he just had a bad hip. Olmsted refused medical assistance.

When the officers told him he was being detained to allow them to investigate a recently reported assault, Olmsted became aggressive and started screaming and accusing the officers of having touched his painful genitals while searching him. The officers did not see any blood or bruising on Olmsted's hands or any blood on his clothing.[2]

After arresting Olmsted, one of the officers proceeded to the urgent care clinic to contact Yeager. When the officer arrived at the clinic, Yeager's nose was bleeding and she was very upset. Yeager did not appear "intoxicated." 2 RP at 184. Yeager told the officer that she had accidentally kicked Olmsted.

The clinic transferred Yeager to an emergency room for further evaluation. Yeager's face was bruised and swollen on her forehead and under both eyes, and both sides of her jaw were tender. The doctor concluded that these injuries could not have been caused by a single blow.

The officer later visited Yeager in her apartment and observed blood on the bed, blood on the dresser in the bedroom, a broken mirror, needle-nose pliers next to the bed, and Yeager's urine-soiled pants. The officer also noticed that the television was in the bathroom.

## II. PROCEDURE

The State charged Olmsted by amended information with second degree assault (domestic violence).[3] The case proceeded to a jury trial; Olmsted argued that he had struck Yeager once in self-defense after she kicked him in the testicles.

---

[2] About 18 hours after the officers booked him into jail, a nurse and a physician's assistant examined Olmsted; his scrotum was swollen and bruised. Several days later, a private investigator hired by the defense photographed the injuries and noted that the area was bruised.

[3] The State also charged him in the alternative with attempted second degree assault. The trial court later refused to instruct the jury on this alternative charge and it is not at issue on appeal.

A. JURY SELECTION AND TRIAL TESTIMONY

During voir dire, the parties exercised their peremptory challenges by "passing a clipboard back and forth" until each side had exercised its peremptory challenges or was satisfied with the panel. 5 RP at 715. Neither party objected to this process.

In addition to the facts described above, Yeager testified that Olmsted had struck her repeatedly in the head and that he struck her so hard that she urinated in her pants. Yeager also testified that Olmsted broke a mirror, threw a television into the bathroom, and threw a pair of pliers at her. Yeager further testified that her nose was still bleeding when she arrived at the hospital about 10 minutes after the assault.

She also testified that at one point after he started to hit her, Olmsted accused her of having kicked him "in [the] balls." 3A RP at 268. Yeager could not recall kicking Olmsted and denied having kicked him intentionally, but she testified that she might have accidentally kicked him when she kicked off some blankets. Although she admitted she had told the investigating officer that she had accidentally kicked Olmsted, Yeager asserted that this was only because this was what Olmsted had told her repeatedly during the assault.

In contrast, Olmsted testified that Yeager had kicked him in the testicles after he discovered she had been using methamphetamine and told her to leave. He asserted he had reflexively slapped Yeager once across the face and she then started hitting him. He testified that he had accidentally pulled the television down and that Yeager threw a mirror at him. He further testified that shortly after Yeager left, he left the house to purchase some cigarettes at a local convenience store.

Olmsted also explained his contact with McNett. Olmsted testified that after Yeager left, he had considered going to a hospital, not the nearby urgent care clinic, to address his injury. When

he went outside, he noticed someone sitting in a car looking at a cell phone and playing some loud music, so he shouted over the music asking for a ride to the hospital. The person in the car "looked at [Olmsted] like [he] was stupid" and did not offer him a ride. 3B RP at 403.

Olmsted also explained that he was not being aggressive towards the arresting officers. He asserted that when the officers were searching him, they made contact with his testicles and he was in pain, which could have been misconstrued as aggression.

## B. CLOSING ARGUMENT

The State started its closing argument by stating,

> We're here today because of [Olmsted's] rage. Rage when he attacked [Yeager], rage as he smashed items in the house, rage as he followed her, screaming at her in the night, *rage as he tried to attack an innocent person in a car*, rage as he taunted the police. We're here because of that man and the crimes he committed. He's here today charged with assault in the second degree for causing substantial bodily harm to Amy Yeager. And the Judge gave you the jury instructions that define it and I'm going to go through that and match up how the evidence fits.

3B RP at 498 (emphasis added). Olmsted did not object to this argument.

Later, when discussing the substantial bodily harm element, the State argued,

> So let's talk about the injuries in this case, what we have. Within an hour of this happening, we have Officer Long who is meeting with Amy Yeager at the urgent care clinic. She instantly said she sees black eyes developing even that quickly. Her nose is completely swollen. She has an abrasion, a huge bump up here. Both sides of her jaw are swelling. She also is bleeding from her nose.
> And I want you to think about this: by the time Officer Long saw her, just about an hour had passed since these assaults. She is still bleeding from her nose, even after applying pressure all the way down to the hospital. *That is a lot of strength.* That is a huge force that makes you continue to bleed for an hour. She also testified her nose was so swollen she's having problems breathing out of it.

3B RP at 502 (emphasis added). Olmsted did not object to this argument.

In his closing argument, Olmsted argued that the State had not proven the crime beyond a reasonable doubt and reminded the jury of the reasonable doubt standard, stating,

5

They have to prove it beyond a reasonable doubt, more than in a civil case, more than in a -- any case but the criminal law. It's the highest burden of proof in our system. It's very clear, and I think we're all talking and told about that earlier.

3B RP at 519.

He also argued that Yeager's testimony was inconsistent because she had told the police that she had kicked him but had testified that she had not kicked him; Olmsted referred to Yeager's inconsistent statements as her taking the jury on "Miss Toad's Wild Ride." 3B RP at 517. Olmsted further argued that the jury should consider the fact that Olmsted's hands were not injured, cut, or otherwise marked, which was inconsistent with someone having hit another person in the head multiple times.

In rebuttal, the State argued,

> But what happens when you take a hard object and put it on a soft object? The soft object, that gets the injury. The hard -- and if you know how to hit someone, you're not going to injure your hands. It's ludicrous to think that anyone who has hit someone multiple times, that you're going to bloody up your hands. *If you know how to punch someone, you're punching someone correctly, you're not going to injure yourself.* And I mean -- and that is just common knowledge.

3B RP at 546 (emphasis added). Olmsted did not object to this argument.

The State also argued,

> He also says that she took us -- [Yeager], she took us on this -- this wild train ride . . ., and we couldn't believe anything she said because she's so inconsistent. And I don't know where that's coming from because she has been nothing but consistent. She's been consistent, she's been consistent about the pain, she's been consistent about what happened.
> The sole thing, the sole thing that has changed in the multiple times she's had to tell this story is about whether she kicked him or not, and she said, "If I told them that that's what happened, I heard the 911, I told the officers, then that's what I said, but at this point, I just don't remember." I mean, and that's someone being candid. How easy would it be for her to sit up here and just repeat the same thing she had said, but she didn't. *She was being honest. She was under oath.*

3B RP at 546-47. Olmsted did not object to this argument.

6

The State also commented on Olmsted's characterization of the reasonable doubt standard and argued that it did not matter whether either counsel thought the State had met its burden. The State then argued,

> It's proof beyond a reasonable doubt, and the evidence strongly supports that in this case. Proof beyond a reasonable doubt doesn't mean proof beyond any doubt. It's a reasonable doubt, *a doubt you can sleep with.*

3B RP at 542 (emphasis added). Olmsted did not object to this argument.

The jury found Olmsted guilty of second degree assault (domestic violence).

## C. SENTENCING

At sentencing, the State argued that Olmsted had two prior strike convictions under the POAA. One of the prior offenses was a 1994 second degree assault conviction.[4] The State provided the trial court with copies of the 1994 information, Olmsted's 1994 statement of defendant on plea of guilty (SDPG), and the judgment and sentence.

Count V of the 1994 information alleged,

> That he, MICHAEL DON OLMSTED, did in the County of Clark, State of Washington, on or about the 2nd day of November, 1994, did *knowingly* assault Matthew McGrady, a human being, with a deadly weapon, to-wit: a pool cue or club, in violation of [former ]*RCW 9A.36.021(1)(c)* [(1988)], contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Washington.
> This crime is a "most serious offense" pursuant to the POAA (Chapter 1, Section 3 Laws of 1994).

Ex. 5 (Information at 2) (emphasis added).

The SDPG stated that Olmsted was pleading guilty to count V. It stated the elements of second degree assault:

---

[4] The other prior conviction is not at issue.

> On Nov. 2, 1994, in Clark Cy WA, [Olmsted] *knowingly* assaulted Matthew McGrady with a deadly weapon, to-wit: a pool cue.

Ex. 5 (SDPG at 1) (emphasis added). But in his statement, Olmsted stated,

> On Nov. 2, 1994, in Clark Cy., WA, *I did assault* Matt McGrady with a pool cue.
> I waive my right to assert self-defense in order to take advantage of a plea bargain.

Ex. 5 (SDPG at 7) (emphasis added). The SDPG did not state the statutory basis for the charge. The judgment and sentence, however, stated that Olmsted had been convicted of second degree assault under former RCW 9A.36.021(1)(c).

The trial court found by a preponderance of the evidence that Olmsted had two prior strike convictions under the POAA.[5] Because the current offense was also a strike offense, the trial court sentenced Olmsted to life without the possibility of release under the POAA.

Olmsted appeals his conviction and sentence.

## ANALYSIS

### I. PROSECUTORIAL MISCONDUCT

Olmsted first argues that the State committed reversible misconduct by (1) trivializing the burden of proof, (2) vouching for Yeager's credibility, and (3) arguing facts not in evidence. Olmsted further contends that this misconduct was so pervasive it could not have been cured with proper instruction. Because the State's argument was not improper or Olmsted waived these issues by failing to object to the alleged misconduct, his prosecutorial misconduct claims fail.

---

[5] The State had presented evidence that the person who had committed both of the prior strike offenses had the same name, social security number, birthdate, tattoos, Department of Corrections number, and fingerprints. Yeager also identified Olmsted in a mug shot related to one of the prior offenses and testified that he had the same birth date noted on the documentation for the prior offenses. Olmsted's sole objection at sentencing was that the fingerprint comparisons the State presented were not sufficient to establish his identity.

## A. STANDARD OF REVIEW

To establish prosecutorial misconduct, Olmsted has the burden of establishing that the challenged conduct was both improper and prejudicial. *State v. Warren*, 165 Wn.2d 17, 26, 195 P.3d 940 (2008), *cert. denied*, 556 U.S. 1192 (2009). We review the prosecutor's conduct "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotations marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

Because Olmsted failed to object to any of the alleged misconduct at trial, however, he is deemed to have waived any error unless he establishes that the misconduct was so flagrant and ill intentioned that it caused an enduring prejudice that could not have been cured with an instruction to the jury and the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict. *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012); *State v. Thorgerson*, 172 Wn.2d 438, 442-43, 258 P.3d 43 (2011). The focus of this inquiry is more on whether the resulting prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remark. *Emery*, 174 Wn.2d at 762.

## B. REASONABLE DOUBT STANDARD

Olmsted argues that the State engaged in flagrant and ill-intentioned misconduct that could not have been cured when it trivialized the burden of proof by stating that reasonable doubt was "a doubt you can sleep with." 3B RP at 542. "Arguments by the prosecution that shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt constitute

misconduct." *State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014) (citing *State v. Gregory*, 158 Wn.2d 759, 859-60, 147 P.3d 1201 (2006), *overruled in part on other grounds by State v. W.R., Jr.*, 181 Wn.2d 757, 336 P.3d 1134 (2014)). Although we agree that this argument was improper, we hold that Olmsted has waived this error.

Olmsted relies on *State v. Anderson*, 153 Wn. App. 417, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010). In *Anderson*, we held that the State's closing argument improperly (1) implied that the jury had a duty to convict the defendant unless the jury could find a reason not to convict, (2) minimized the importance of the reasonable doubt standard by discussing the standard in the context of everyday decisionmaking, and (3) suggested that the jury had a duty to find the defendant guilty by suggesting that the juror should focus on the degree of certainty under which it would be willing to act rather than what would cause it to hesitate to act. 153 Wn. App. at 431-32. Anderson did not object to these arguments in the trial court. Although we held that the State's arguments were improper, we held that Anderson had "failed to demonstrate that these comments were so flagrant or ill intentioned that an instruction could not have cured the prejudice," noting that "[t]he trial court's instructions regarding the presumption of innocence minimized any negative impact on the jury." *Anderson*, 153 Wn. App. at 432.

Even if we assume, without deciding, that this argument was improper, we cannot say that this brief misstatement of the reasonable doubt standard, which was much less egregious than the several improper arguments in *Anderson*, could not have been cured by a proper instruction

No. 45260-0-II

reiterating the reasonable doubt instruction that the trial court had provided the jury.[6] Accordingly, we hold that Olmsted has waived this error.

## C. Vouching

Olmsted next argues that the State engaged in flagrant and ill-intentioned misconduct that could not have been cured by commenting on Yeager's credibility when it argued that she was "being honest." 3B RP at 547. We disagree.

Although prosecutors are not permitted to state their personal beliefs about a witness's credibility,[7] they may draw and express reasonable inferences from the evidence produced at trial. *State v. Mak*, 105 Wn.2d 692, 726, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986), *overruled in part on other grounds by State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994). Read in context, that is what happened here. The State was not arguing that it believed that Yeager was being truthful. Rather, it was responding to Olmsted's argument that Yeager was fabricating her story by describing the evidence from which the jury could conclude that Yeager's testimony was truthful and not fabricated. Because Olmsted does not show that this statement was improper, he does not establish prosecutorial misconduct on this ground.

---

[6] This instruction stated,

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

Clerk's Papers at 28; 3B RP at 485.

[7] *State v. Dhaliwal*, 150 Wn.2d 559, 577-78, 79 P.3d 432 (2003).

11

## D. FACTS NOT IN EVIDENCE

Olmsted next argues that the State engaged in flagrant and ill-intentioned misconduct by mischaracterizing or embellishing the evidence three different times. Again, we disagree.

It is improper for the State to argue facts that are not in evidence. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704-05, 286 P.3d 673 (2012). But the State is allowed to draw reasonable inferences from the evidence. *State v. Stenson*, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997).

Olmsted first argues that the State's argument that he had "tried to attack an innocent person in a car" was not based on the evidence. 3B RP at 498. Although the "attack" may not have been to McNett's person, this was a reasonable representation of McNett's testimony. Olmsted does not show that this portion of the State's argument was improper.

Second, Olmsted argues that the State's argument that Yeager's persistent nosebleed demonstrated he had hit her with "a huge force" was not based on the evidence. 3B RP at 502. Again, although there was no testimony about the amount of force needed to cause a persistent nosebleed, this was a reasonable argument based on the evidence. Not only was Yeager's nose bleeding for a substantial amount of time, she suffered two black eyes and other facial injuries, and it was reasonable to conclude that she was struck with considerable force when she sustained those injuries. Olmsted does not show that this portion of the State's argument was improper.

Third, Olmsted argues that the State's argument that it was "common knowledge" that someone could punch someone without injuring himself if he knew how to punch them "correctly" was not based on the evidence. 3B RP at 546. We agree that this argument was not based on the evidence and that knowing someone could escape injury if they punched a person "correctly" is

not necessarily something most people know. Nor is this statement a reasonable inference from the record as there was no evidence in the record about whether striking someone else with a fist does or does not cause injury to the person doing the striking. But even if this is improper argument, Olmsted does not show that this improper argument was so flagrant and ill intentioned that it could not have been cured by a proper instruction.[8] Accordingly, Olmsted has waived this argument.

### E. CUMULATIVE PROSECUTORIAL MISCONDUCT

Finally, Olmsted argues that these alleged instances of prosecutorial misconduct were so pervasive they could not have been cured with proper instruction. Again, we disagree.

Although "'[t]he cumulative effect of repetitive prejudicial prosecutorial misconduct may be so flagrant that no instruction or series of instructions can erase their combined prejudicial effect,'" such is not the case here. *Lindsay*, 180 Wn.2d at 443 (internal quotation marks omitted) (quoting *Glasmann*, 175 Wn.2d at 707). Here, the only two instances of improper argument that Olmsted establishes are (1) the State's brief misstatement of the reasonable doubt standard, and (2) the State's comment that it was common knowledge that someone could strike another person without injuring himself if he did so "correctly." Each argument was distinct and each could have been easily cured by proper instruction to the jury. Additionally, they were two relatively minor comments in the context of the State's argument as a whole. We hold that two such errors do not

---

[8] We note that the trial court had already instructed the jury that counsels' arguments were not evidence; that the jury should disregard any argument that was not supported by the evidence; and that the evidence the jury could consider was the testimony, stipulations, and exhibits that were admitted at trial.

amount to such pervasive error that they could not have been cured by proper instruction. Accordingly, Olmsted's prosecutorial misconduct arguments fail.

## II. PUBLIC TRIAL

Olmsted next argues that the trial court violated his Sixth Amendment[9] and article I, section 22[10] rights to a public trial by having the parties exercise their peremptory challenges outside the jury's hearing and off the record without first considering the *Bone-Club*[11] factors. Consistent with our recent decisions, we hold that no public trial right violation occurred. *State v. Marks*, 184 Wn. App. 782, 789, 339 P.3d 196 (2014); *State v. Dunn*, 180 Wn. App. 570, 575, 321 P.3d 1283 (2014), *review denied*, 181 Wn.2d 1030 (2015). Accordingly, this argument fails.

## III. STRIKE OFFENSES

Olmsted next challenges his sentence under the POAA. He argues that (1) his life sentence violates his Sixth Amendment right to a jury determination beyond a reasonable doubt that he had two prior strike convictions because the trial court made this determination based on a preponderance of the evidence, and (2) the trial court erred in using a facially invalid prior conviction. These arguments fail.

### A. PREPONDERANCE OF THE EVIDENCE STANDARD

As to Olmsted's first argument, he acknowledged in his opening brief that our Supreme Court would address this issue in *State v. Witherspoon*, 180 Wn.2d 875, 329 P.3d 888 (2014),

---

[9] U.S. CONST. amend. VI.

[10] WASH. CONST. art. I, § 22.

[11] *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).

which was not yet issued when he filed is appellate brief in June 2014. Our Supreme Court issued *Witherspoon* in July 2014, and rejected this argument, reiterating that the trial court may find the fact of a prior conviction for purposes of the POAA by a preponderance of the evidence. 180 Wn.2d at 892-93. Accordingly, this argument fails.

## B. FACIAL VALIDITY OF 1994 CONVICTION

Finally, Olmsted argues that the trial court erred in including the 1994 second degree assault conviction as a strike offense. He contends that the 1994 conviction is facially invalid because there was no such crime in Washington as a *knowing* assault with a deadly weapon in 1994. He further argues that his 1994 guilty plea was not knowing, voluntary, and intelligent because it was a nonexistent crime and that he is therefore entitled to be resentenced without the 1994 offense in his criminal history. We disagree.

> The State is not required to prove the constitutional validity of prior convictions before they can be used at sentencing. *State v. Ammons*, 105 Wn.2d 175, 18[7-8]8, 713 P.2d 719[, 718 P.2d 796, *cert. denied*, 479 U.S. 930] (1986). Generally, the defendant has no right to contest prior convictions at a subsequent sentencing because there are more appropriate methods for contesting the validity of prior convictions. *Ammons*, 105 Wn.2d at 188.
> But a prior conviction that is unconstitutionally invalid on its face may not be considered at sentencing. *Ammons*, 105 Wn.2d at 187-88. "On its face" includes the judgment and sentence and documents signed as part of a plea bargain. *State v. Thompson*, 143 Wn. App. 861, 866-67, 181 P.3d 858[, *review denied*, 164 Wn.2d 1035] (2008). A conviction is facially invalid if constitutional invalidities are evident without further elaboration. *Ammons*, 105 Wn.2d at 188.

*State v. Webb*, 183 Wn. App. 242, 250, 333 P.3d 470 (2014) (footnote omitted), *review denied*, 182 Wn.2d 1005 (2015).

Here, Olmsted does not establish that his 1994 conviction was constitutionally invalid on its face because he was charged with a nonexistent crime. The second degree assault statute in effect when Olmsted committed the 1994 second degree robbery, former RCW 9A.36.021(1)(c)

provided that a person commits second degree assault when he "[a]ssaults another with a deadly weapon." The information and judgment and sentence cite to the correct second degree assault statute, and Olmsted's statement in his SDPG establishes the elements required under that statute. Although the information and statement of the charge in the SDPG included the term "knowingly" as an element of the crime, this appears to be a scrivener's error[12] and given the citation to the correct statute and Olmsted's proper plea statement, the inclusion of this language alone does not establish facial invalidity.

Ultimately, to determine whether the 1994 conviction was constitutionally invalid, we need to also examine whether Olmsted's counsel or the trial court informed him of the correct elements before accepting his plea and that is not something we can determine solely based on the information and the SDPG. *See Ammons*, 105 Wn.2d at 189 (determination of whether conviction was unconstitutional could not be made from face of documents because it was not clear from the documents alone whether defendant's attorney or the trial court had properly informed him of the necessary elements, his rights, or the plea consequences). This inquiry requires us to go beyond

---

[12] Olmsted suggests that the State charged him under a previous version of the second degree assault statute, former RCW 9A.36.020(1)(c) (1979), which was repealed effective July 1, 1988. LAWS OF 1986, ch. 257, § 9. But former RCW 9A.36.020(1)(c) (1979) provided that a person was guilty of second degree assault if he or she "knowingly assault[s] another *with a weapon or other instrument or thing likely to produce bodily harm*," not a deadly weapon. (Emphasis added.) *See* RCW 9A.04.110(6) ("'Deadly weapon' means any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance . . . which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm."). Although former RCW 9A.36.020(1)(c) (1979) contained a knowledge element, it did not require that the defendant commit the assault with a deadly weapon, which was what was alleged in the information and the SDPG. Accordingly, Olmsted does not show that the State brought the 1994 charges under former RCW 9A.36.020(1)(c) (1979); he merely shows that it erroneously included the term "knowingly" in the information and the SDPG's statement of the charge.

16

the charging and plea documents and precludes us from holding that the 1994 conviction was unconstitutionally invalid on its face. Accordingly, this argument fails.

Because Olmsted either waived his arguments or his arguments fail, we affirm his conviction and his sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

WORSWICK, J.

MELNICK, J.