**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47383-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| RONNIE M. BATACAN, | |
| Appellant. | |

BJORGEN, A.C.J. — Ronnie Batacan appeals his conviction for felony violation of a no contact order. He argues that the State committed prosecutorial misconduct in closing argument by improperly vouching for the credibility of a testifying police officer and by shifting and mischaracterizing the burden of proof. Batacan also argues that he received ineffective assistance of counsel because his attorney did not object to the portions of the State's argument he now challenges on appeal. We hold that the State did not improperly vouch for its witness or shift or mischaracterize its burden of proof. We hold also that Batacan has not shown that he received ineffective assistance of counsel because he has not shown that his attorney's performance was deficient. Accordingly, we affirm Batacan's conviction.

FACTS

Officer Alex Ficek was on patrol in Lacey when he recognized Batacan leaning against a car in a parking lot, talking to the driver of that car. Ficek ran a computer search, which revealed a reason to question Batacan. Officer Ficek approached and spoke with Batacan, who by then was no longer near the car. He discovered that Batacan was subject to a no contact order prohibiting him from contacting Lori Arko and, upon further investigation, learned that Arko was the driver of the car against which Batacan had been leaning. When questioned, Batacan

admitted that he had been in contact with Arko the previous evening, despite being aware of the no contact order.

The State charged Batacan with felony violation of a domestic violence no contact order. At trial, Batacan presented two witnesses: himself and Arko. The State presented one witness: Officer Ficek. The only other evidence presented was a photograph of Arko that Officer Ficek took at the time he arrested Batacan and copies of the no contact order and Batacan's two prior judgments and sentences for violation of other no contact orders, which were necessary to prove the felony violation. The witnesses presented generally conflicting testimony, with Batacan and Arko both denying any direct contact and Officer Ficek stating that he saw them talking and that Batacan had admitted to seeing Arko the previous evening.

The jury was instructed that

> [i]n considering a witness's testimony, you may consider these things: the opportunity of the witness to observe or know the things he or she testifies about; the ability of the witness to observe accurately; the quality of a witness's memory while testifying; the manner of the witness while testifying; any personal interest that the witness might have in the outcome or the issues; any bias or prejudice that the witness may have shown; the reasonableness of the witness's statements in the context of all of the other evidence; and any other factors that affect your evaluation or belief of a witness or your evaluation of his or her testimony.

Clerk's Papers (CP) at 34. In closing argument to the jury, both the State and the defense argued that the jury's verdict would essentially be determined by its decisions on the witnesses' credibility. Batacan did not object to any portion of the State's closing argument.

The jury delivered a guilty verdict. Batacan now appeals his conviction.

ANALYSIS

I. PROSECUTORIAL MISCONDUCT

Batacan argues that the State committed prosecutorial misconduct and thereby denied him a fair trial by (1) vouching for the credibility of its witness, (2) shifting the burden of proof

to Batacan on the issue of witness bias, and (3) mischaracterizing the State's burden of proof. We disagree with Batacan's contentions.

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). We examine the prosecutor's conduct and whether prejudice resulted therefrom by considering the evidence presented, the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions given to the jury. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). Misconduct is prejudicial if there is a substantial likelihood it affected the verdict. *Emery*, 174 Wn.2d at 760

A.      Vouching

Batacan contends that the State improperly vouched for its witness's credibility in closing argument by asking the jury to infer that Officer Ficek was unbiased. We hold that the argument was not improper.

A prosecutor improperly vouches for a witness by expressing a personal belief in the veracity of a witness or arguing that evidence not presented at trial supports the witness's testimony. *Thorgerson*, 172 Wn.2d at 443. But is not improper for a prosecutor to "draw[] an inference from the evidence as to why the jury would want to believe one witness over another." *State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995). "'Prejudicial error does not occur until such time as it is clear and unmistakable that counsel is not arguing an inference from the evidence.'" *State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009) (quoting *State v. McKenzie*, 157 Wn.2d 44, 134 P.3d 221 (2006)).

Here, the prosecutor asked the jury to

[l]ook at the bias. Look at the reasons why you are hearing what you heard. Ms. Arko, who was very, very up front with you, she wanted to see the defendant

3

because—and the tense was important, not she "loved" him—she "loves" him, and she said, point blank, she didn't want him to get in trouble.

The defendant, you can draw your own conclusions on why you're hearing what you're hearing.

What bias did you hear about . . . the officer? What reasons would the officer have to tell you what he told you, except the fact that that's what he saw?

This is a case, I would submit to you, that revolves around that one issue. Everything else is essentially uncontested, but we have two people who have very strong, very obvious reasons for why they told you what they told you, reasons that are understandable. No one is saying anyone is malicious or evil. They are understandable, but they are reasons for why they would tell you these versions of events of what you heard. Then you have an officer right towards the end of his shift, based on what he told you, just happens to be driving by, sees someone he recognizes.

Aside from it actually happening, what reasons does he have to tell you that? You didn't hear anything. That instruction says you are the sole judges of the credibility of each witness and the value or weight to be given to the testimony of those witnesses. I would submit to you, based upon all of the information that you have received, the only witness or the witness with the most weight, I would submit, is the one who has nothing to gain, the one you heard nothing about why he would theoretically make all of this up. That's Ofc. Ficek.

Report of Proceedings (RP) at 170-72. Later, the State revisited this idea:

Is [Officer Ficek] a law enforcement officer? Sure. Does he do that for a living? Absolutely. But does he have some magic requirement that he has to go to trial X number of times and he has to get so many—you never heard anything like that.

RP at 188.

Taken in context, the State argued that the jury should infer from the evidence presented at trial that both Batacan and Arko were biased and, therefore, that their testimony was not credible to the extent that it conflicted with Officer Ficek's testimony. Taken out of context, it may seem like portions of the State's argument asked the jury to infer Officer Ficek's lack of bias from outside evidence. *See* RP at 171 ("What reasons would the officer have to tell you what he told you, except the fact that that's what he saw?"). However, in the full context it

appears instead that the State was simply pointing out that the evidence indicated that Batacan and Arko were biased by their personal interest in the case, while no evidence showed that Officer Ficek had any similar interest in the case. *See* RP at 171 ("You didn't hear anything."), 172 ("[Officer Ficek is] the one you heard nothing about why he would theoretically make all of this up."). Therefore, the State was arguing inferences from the evidence presented at trial, not presenting personal opinions or arguing that unavailable evidence bolstered Officer Ficek's credibility. We hold that this was not improper, and thus the State did not commit prosecutorial misconduct.

B.      Burden Shifting

Batacan also argues that the State's argument drawing inferences about bias improperly shifted the burden of proof to the defense. We disagree.

The State has the burden to prove each element of a charged crime beyond a reasonable doubt. *State v. Kalebaugh*, 182 Wn.2d 578, 584, 355 P.3d 253 (2015). "A prosecutor generally cannot comment on the defendant's failure to present evidence because the defendant has no duty to present evidence." *Thorgerson*, 172 Wn.2d at 453. A prosecutor may not argue that a jury can infer guilt from a failure to produce evidence. *State v. Jackson*, 150 Wn. App. 877, 885, 209 P.3d 553 (2009). However, a prosecutor may argue that the evidence or lack thereof indicates that the State's witnesses are more credible than the defense's witnesses. *Id.*

As quoted above, several times in closing argument the State mentioned that no evidence indicated that Officer Ficek had a motive to falsely testify against Batacan. *See* RP at 171 ("What bias did you hear about by the officer?"), 171 ("[Officer Ficek is] the one you heard nothing about why he would theoretically make all of this up."), 188 ("[D]oes he have some magic requirement that he has to go to trial X number of times and he has to get so many—you

never heard anything like that."). None of these statements, however, indicated that the jury could infer Batacan's guilt from his failure to produce evidence of Officer Ficek's bias. Instead, the statements were clearly targeted at a comparison of witness credibility. This was permissible under *Jackson*. Therefore, the State did not act improperly.

C.      Mischaracterizing the Burden of Proof

Batacan argues that the State committed prejudicial misconduct by mischaracterizing the burden of proof in closing argument. We disagree.

A prosecutor who addresses the reasonable doubt standard in closing argument acts improperly by "trivializ[ing] and ultimately fail[ing] to convey the gravity of the State's burden and the jury's role in assessing its case against [the defendant]." *Anderson*, 153 Wn. App. at 431. A prosecutor also acts improperly by arguing to the jury that it must find the defendant guilty if it cannot articulate a specific reason for its doubt as to guilt. *State v. Johnson*, 158 Wn. App. 677, 684-85, 243 P.3d 936 (2010). In essence, the State acts improperly when it mischaracterizes the standard as requiring anything less than an abiding belief that the evidence presented establishes the defendant's guilt beyond a reasonable doubt. *See State v. Pirtle*, 127 Wn.2d 628, 657-58, 904 P.2d 245 (1995).

Batacan contends that the State minimized the reasonable doubt standard by arguing that the jury must be "sure" in order to convict. Br. of Appellant at 11. The prosecutor told the jury:

> There is the final instruction that tells you about reasonable doubt, doubt for which a reason exists, but it goes on to say, if you have an abiding belief in the truth of the matter asserted, then you are convinced beyond a reasonable doubt . . . . "An abiding belief" actually is a phrase you may not fully think you have a meaning of, because it's not something that is used in everyday language, right? That's also the phrase we don't define for you, and [I] submit to you that that's because that's for you to decide.
>
> There is no scale. There is no sliding range. Do [you] have an abiding belief, and I would submit to you, are you sure? Are you confident that, yeah, based

on everything I heard, yeah, this is what happened. No, this [other testimony] makes absolutely no sense, why should I consider it? And I would submit to you, when you look back at all of the information, when you look back at the reasons you got the information you got from each individual person, that the only information left standing after that is the information that was provided to you by Ofc. Ficek, and based on that, I ask you to find the defendant guilty.

RP at 190. In context, it is clear that the prosecutor was trying to explain how the jury would arrive at an "abiding belief" in light of conflicting testimony by deciding which testimony to credit. As long as the meaning of the reasonable doubt standard is retained in context, "correct and clear language prevents archaic language from causing confusion." *State v. Cervantes*, 87 Wn. App. 440, 447, 942 P.2d 382 (1997). According to Batacan, being "sure" or "confident" is quantitatively less stringent than having an abiding belief, and equating the terms minimized the burden of proof. *See* Br. of Appellant at 11. But reading the State's argument in its full context, the statements did not suggest that some level of confidence short of an abiding belief beyond a reasonable doubt was sufficient to convict. Nor did they trivialize the State's burden or reduce it to an everyday, common decision. The State's argument was consistent with the gravity of its burden. It was not improper.

D.    Cumulative Impact

Batacan argues that even if none of the preceding claims of prosecutorial misconduct warrant reversal, the cumulative effect of several improper arguments denied him a fair trial. But, as discussed above, the State did not act improperly. The cumulative effect of its arguments did not deny Batacan a fair trial.

II. INEFFECTIVE ASSISTANCE OF COUNSEL

Batacan argues that he received ineffective assistance of counsel because his attorney failed to object to the portions of closing argument that Batacan now claims constituted prosecutorial misconduct. Br. of Appellant at 15-17. We disagree.

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on such a claim, the defendant must show that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *Grier,* 171 Wn.2d at 32-33. We presume that counsel's performance was not deficient. *Id.* The defendant may rebut this presumption by showing that the performance was not a matter of legitimate trial strategy or tactics. *Id.*

Batacan has not shown that his attorney's decision not to object to the State's closing argument was deficient. "Defense counsel's failure to object to a prosecutor's closing argument will generally not constitute deficient performance because lawyers 'do not commonly object during closing argument absent egregious misstatements.'" *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 721, 327 P.3d 660 (2014)(internal quotation marks omitted) (quoting *In re Pers. Restraint of Davis,* 152 Wn.2d 647, 717, 101 P.3d 1 (2004)). As shown by the discussion of prosecutorial misconduct above, the State's arguments were not improper. Therefore, Batacan's attorney had no reason to object. This is particularly true because the trial court likely would not have sustained the objections.

Batacan has not overcome the presumption that his attorney's performance was reasonable and therefore has not established that his counsel provided deficient representation. Accordingly, Batacan has not shown that he received ineffective assistance of counsel.

CONCLUSION

Batacan has shown neither prosecutorial misconduct nor ineffective assistance of counsel. We affirm his conviction for felony violation of a no contact order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
BJORGEN, A.C.J.

We concur:

_____
LEE, J.

_____
MELNICK, J.