FILED
5/23/2022
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 82584-4-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| CESAR EDUARDO MARTINEZ-ZUNIGA, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, A.C.J. — Cesar Eduardo Martinez-Zuniga was charged with three counts of rape of a child in the first degree following accusations made by his seven-year-old half-sister M.M. The jury returned a guilty verdict on two of the three counts. For the first time on appeal, Martinez-Zuniga contends that the prosecutor committed misconduct by commenting on his right to silence, improperly appealing to emotion, and misstating the burden of proof. He also contends that the court erroneously allowed improper opinion testimony and that he received ineffective assistance when his counsel failed to object to any of these errors. We conclude that the prosecutor's closing argument improperly appealed to emotion and agree that certain testimony was improper. However, because the errors were not prejudicial and counsel's performance did not fall below an objective standard of reasonableness, we affirm.

Citations and pin cites are based on the Westlaw online version of the cited material.

**FACTS**

Cesar Eduardo Martinez-Zuniga moved to his father's house in Des Moines, Washington in November 2017. Julio Cesar Martinez Sr. (Martinez) left Martinez-Zuniga when he was a year old and, though Martinez-Zuniga felt no animosity toward his father, their relationship was not close, and deteriorated once they began living together. Also living in the house were Martinez's wife, Ana Patricia Rodriguez Moran,[1] and their three children, Martinez-Zuniga's half-siblings: J.M., M.M., born in December 2011, and S.M. Martinez's daughter from a prior relationship, the oldest of his children other than Martinez-Zuniga, would occasionally stay over on weekends.

At some point after his arrival, Martinez-Zuniga began sexually abusing M.M. She first reported the abuse to J.M., four years her elder. He encouraged her to tell their older sister, who in turn convinced M.M. to tell Martinez and Moran. Martinez-Zuniga denied the accusations when confronted by his family shortly afterward. Martinez and Moran filed a police report that night, August 7, 2019.

Two weeks later, on August 21, 2019, M.M. received a forensic examination at the Harborview Hospital Abuse and Trauma Center. The results were atraumatic, neither indicating nor ruling out sex abuse.

Two days after the forensic examination, M.M. interviewed with a King County Child Interview Specialist. In the interview, M.M. describes multiple

---

[1] Ms. Moran's name is spelled both "Rodriguez" and "Rodriquez" in different parts of the record. We intend no disrespect if our spelling here is incorrect.

instances of rape. Though the number of instances of sexual assault and their chronology is somewhat unclear, she describes abuse in various forms happening "[a] lot of times" on different days. She is clear, however, that the abuse first began when she was in first grade. She is able to describe his genitals in some detail, and describes her own as hurting and feeling "bad," "weird," and "gross" during the assault. Video and transcript of the forensic interview were admitted at trial.

The State charged Martinez-Zuniga with three counts of rape of a child in the first degree and the case proceeded to trial. The State's case consisted of M.M.'s testimony, testimony from her older brother J.M., from her parents, her older sister, the law enforcement officers who had taken the family's report, the doctor who conducted the review at Harborview, and the forensic interviewer. M.M. repeated many of her previous statements and provided additional details when she took the stand. She confirmed that the last instance of abuse occurred when she was in second grade and made a more detailed estimate about the number of incidents: 20-25. In response, Martinez-Zuniga testified and denied the accusations.

The prosecution's closing argument began with an involved comparison between the abuse M.M. routinely suffered and everyday activities of other children her age, concluding that "any sense of a normal childhood for [M.M.] ceased to exist." Defense counsel did not object to this argument either in the midst of the State's closing arguments or subsequently, when given the chance to do so by the court outside the presence of the jury. The State's closing

argument also compared M.M.'s credibility about her abuse to her credibility about her seventh birthday party, which had been a repeated subject of the State's questioning. Defense counsel again did not object.

The jury returned a guilty verdict on two of the three counts. Martinez-Zuniga appeals.

**ANALYSIS**

Martinez-Zuniga asserts four main errors on appeal: (1) the prosecutor committed misconduct by commenting on Martinez-Zuniga's right to silence by mentioning in his cross-examination of the defendant that they had never spoken before; (2) the prosecutor committed misconduct by making an emotional appeal during closing argument; (3) the prosecutor trivialized the burden of proof in his closing argument when comparing M.M.'s credibility about her abuse and her birthday; and (4) opinion testimony from M.M.'s brother J.M. constitutes manifest error and the prosecutor committed misconduct by eliciting of the testimony. In addition to these four errors, Martinez-Zuniga contends that his attorney provided ineffective assistance by not objecting to any of the asserted prosecutorial misconduct. He finally argues that even if any particular error does not alone warrant reversal, the cumulative effect of the errors does.

<u>Prosecutorial Misconduct and Opinion Testimony</u>

The right to a fair trial is secured by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I, Section 22 of the Washington State Constitution. <u>In re Pers. Restraint of Glassman</u>, 175 Wn.2d 696, 703, 286 P.3d 673 (2012). Prosecutors, as quasi-judicial officers

representing the state, are uniquely positioned to create constitutional error affecting a defendant's due process right to a fair trial. See State v. Reed, 102 Wn.2d 140, 145-47, 684 P.2d 699 (1984) (concerning long-recognized duties of prosecutors). A prosecutor's misconduct can violate this right. State v. Davenport, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984).

It is the general rule that appellate courts will not consider issues raised for the first time on appeal. RAP 2.5(a); State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). An unchallenged error is nonetheless reviewable where it is "manifest error affecting a constitutional right." RAP 2.5(a). This exception is narrowly construed. Kirkman, 159 Wn.2d at 935. To establish manifest error, an appellant must (1) identify a constitutional error and (2) demonstrate prejudice by showing "how the alleged error actually affected the defendant's rights at trial." Kirkman, 159 Wn.2d at 926-27.

Where misconduct is at issue, the defendant bears the burden to demonstrate the prejudice required for the manifest error analysis by showing that a substantial likelihood exists that the improper conduct affected the jury's verdict. State v. Thorgerson, 172 Wn.2d 438, 442-43, 258 P.3d 43 (2011). Defense counsel's failure to object constitutes waiver unless the misconduct was so flagrant and ill-intentioned as to render it incurable by jury instruction. State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

1. Implication of Right to Silence

Martinez-Zuniga first contends that the prosecutor commented on his constitutional right to silence when he began cross-examination by noting that

they had never spoken before. U.S. CONST. amend V; CONST. art. I, sec. 9. We disagree.

It is generally improper for a prosecutor to comment on a defendant's silence.[2] Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); State v. Easter, 130 Wn.2d 228, 241, 922 P.2d 1285 (1996) (use of pre-arrest silence may be used only for impeachment); State v. Lewis, 130 Wn.2d 700, 705-06, 927 P.2d 235 (1996) (use of post-arrest silence to impeach improper even where defendant testifies). Washington courts distinguish between direct and indirect comments. State v. Romero, 113 Wn. App. 779, 790, 54 P.3d 1255 (2002). While a direct comment is sufficient to establish manifest error, an indirect comment may not be. Romero, 113 Wn. App. at 790-91.

Here, the challenged exchange was not a comment on Martinez-Zuniga's right to silence, direct or indirect:

> Q: All right, Mr. Martinez-Zuniga, I'm going to be asking you a few questions, okay, sir?
>
> A: Yes, sir.
>
> Q: And so, sir, we've never spoken before. Is that right?
>
> A: No.
>
> Q: This is sort of the first opportunity that you and I have been able to have a conversation. Is that right?
>
> A: Yes, sir.

---

[2] There is no indication in the record that Martinez-Zuniga was ever read his Miranda rights. The State asserts that Martinez-Zuniga never exercised his right, and so "there was nothing upon which the State could impermissibly comment."

The defense did not object and the prosecutor immediately moved on to different matters. The exchange was not referenced at any later point during trial.

These comments do not reference the right explicitly. Instead, they appear mainly to have served the purpose of initiating the conversation and establishing to the jury the level of rapport and familiarity to expect. In beginning cross-examination by establishing the degree of previous communication between witness and attorney, the prosecutor was following a track well-trodden by defense counsel, who began the vast majority of his cross-examinations in a similar fashion. Though the responsibilities of defense counsel and the state are not identical—only the latter is subject to the misconduct analysis we engage in now—this context still helps inform both how the questions were intended to be heard and how the jury may have interpreted them. We conclude that the prosecutor's questions were not comments on Martinez-Zuniga's right to silence and therefore did not constitute prosecutorial misconduct.

2. Emotional Appeal During Closing Argument

Martinez-Zuniga next challenges statements made by the prosecutor during closing arguments, directly comparing the abuse M.M. suffered to typical childhood activities. We agree that the statements were an improper appeal to emotion, but conclude that that they did not prejudice the defendant sufficiently to rise to the level of manifest error.

"A prosecutor acts improperly by seeking a conviction based on emotion rather than reason." State v. Craven, 15 Wn. App. 2d 380, 385, 475 P.3d 1038

7

(2020) rev. denied, 197 Wn.2d 1005 (2021). Prosecutors have wide latitude to make arguments and may draw reasonable inferences from the record, but bald appeals to a jury's passion and prejudice and references to evidence outside the record constitute misconduct. Fisher, 165 Wn.2d at 747. "We review allegedly improper comments in the context of the entire argument." Fisher, 165 Wn.2d at 747.

The sort of comment that is not only misconduct but also serves as basis for reversal is egregious. Our Supreme Court in State v. Monday, for instance, reversed where the prosecutor played on racial prejudice by imitating the defendant's pronunciation and asserting that "black folk don't testify against black folk." 171 Wn.2d 667, 674, 257 P.3d 551 (2011). In Glassman, the prosecutor during closing argument not only included unadmitted evidence in a slideshow but editorialized, superimposing text over the evidence saying "WHY SHOULD YOU BELIEVE ANYTHING HE SAYS ABOUT THE ASSAULT?" and "GUILTY." 175 Wn.2d at 701-02.

In contrast, many cases acknowledge misconduct but do not find that it prejudiced the defendant sufficiently to rise to the level of manifest error. For instance, the Supreme Court in State v. McKenzie found misconduct where the prosecutor drew attention to the victim's "lost innocence," but nonetheless declined to find that the statements were so prejudicial that they could not have been cured by instruction. 157 Wn.2d 44, 60, 134 P.3d 221 (2006). Similarly, the prosecution in Craven repeatedly emphasized during closing argument that the correct verdict is one that "should feel right." 15 Wn. App. 2d at 384. This

8

court still declined to find that the misconduct was so flagrant that it required review for the first time on appeal. Craven, 15 Wn. App. 2d at 391-92. That conclusion was strengthened by the mitigating effect of the jury instruction directing jurors to "reach your decision based on the facts proved to you and on the law given to you, not on sympathy, prejudice, or personal preference." Craven, 15 Wn. App. 2d at 390-91. In light of that instruction, the presumption that it was followed, and nothing indicating that the jury was misled, the misconduct did not lead to the prejudice required for manifest error. Craven, 15 Wn. App. 2d at 391-92.

Here, the prosecutor improperly appealed to the jurors' emotion and therefore committed misconduct. The State's closing arguments began:

> Good afternoon. Now while other little 6 or 7-year-old little children were busy playing hide-and-seek, or outside playing soccer with their friends and family, [M.M.] was being raped and sexually abused in her home. While other kids were occupied with the thought of what they would be eating for a snack after class, [M.M.] was occupied with the thought of having the defendant's penis so far in her mouth that she would be choking and gagging.
>
> While other children her age were busy and engaged with homework from school and planning what they were going to do for recess the very next day, [M.M.] was in the defendant's bedroom with her [clothes] off and her penis [sic] in her vagina and butt.
>
> Ladies and gentlemen, when the defendant, Cesar Eduardo Martinez moved into that house in 2017, any sense of a normal childhood for [M.M.] ceased to exist. While other third graders were busy doing math or science, [M.M.] shared her day with us in that seat.[3] And she told you the horrors of her reality. She told you what the defendant did to her on those days.

---

[3] Martinez-Zuniga relies on this language about M.M. testifying to assert that the prosecutor was improperly drawing attention to the exercise of his right

> Although 2017 was some sort of a new beginning for Eduardo, it was also the beginning of M.M.'s nightmare.

The defense did not object. As in Craven, the jury was instructed to reach its decision based on the facts and the law.

These comments are similar in nature to those in McKenzie and Craven. The prosecutor, by not only engaging in a lengthy discourse emphasizing the severity of the abuse M.M. suffered, but also by placing it at the beginning of his opening to frame everything that followed, committed misconduct. His statements were aimed at evoking the jurors' emotional reactions to the nature of the crimes and invited them to consider Martinez-Zuniga's guilt through a lens of moral outrage. They veer close to the "lost innocence" argument of McKenzie. His arguments did not interpret the evidence and argue guilt on that basis but instead emphasized the severity of the charges over the evidence supporting them. This is misconduct.

Nonetheless, the misconduct was not so flagrant and ill-intentioned as to be reviewable despite the lack of objection below. The prosecutor's statements were not so prejudicial as to be comparable to those in Glassman or Monday. They did not incite racial prejudice, introduce evidence not admitted, or engage in flagrant editorializing. As in Craven, we presume that the jury instruction

---

to trial, "making M.M.'s attendance and testimony necessary." This issue was not assigned error, and to the extent that Martinez-Zuniga is making an argument separate from his more general contention that the prosecutor made an improper emotional appeal during closing, we need not address it. RAP 10.3(a); Graves v. Dep't of Emp't Sec., 144 Wn. App. 302, 182 P.3d 1004 (2008) (declining to address insufficiently briefed due process issue). His argument here is limited to a single citation, without elaboration or application, to State v. Gregory, 158 Wn.2d 759, 147 P.3d 1201 (2006).

admonishing against emotional deliberation was effective, particularly in the absence of any indication otherwise. Finally, though the comments drew attention to the severe nature of the charges, that severity was not unknown to the jury, which had already seen both M.M.'s testimony on the stand and her videotaped interview with the forensic interview specialist. Under such circumstances—particularly since there was no objection and a jury instruction would likely have cured any prejudice—the prosecutor's comments did not give rise to manifest error and were not properly preserved for our review.

### 3. Misstatement of the Burden of Proof

Martinez-Zuniga next contends that the prosecutor committed misconduct during closing argument, misstating the burden of the proof by comparing the credibility of M.M.'s statements about her seventh birthday party to those about her abuse. We disagree.

Prosecutors may not misstate or trivialize their burden of proof. State v. Lindsay, 180 Wn.2d 423, 434, 326 P.3d 125 (2014). One proscribed method of trivialization is comparing the level of confidence required to find "beyond a reasonable doubt" to that required for everyday decision-making. Lindsay, 180 Wn.2d at 436 (prosecutor trivialized and thereby misstated burden equating level of comfort walking across a street with "beyond a reasonable doubt"). But a prosecutor is "entitled to make a fair response to the arguments of defense counsel." State v. Gregory, 158 Wn.2d 759, 842, 147 P.3d 1201 (2006), overruled on other grounds by State v. W.R., Jr., 181 Wn.2d 757, 771, 336 P.3d 1134 (2014). They are also permitted to "comment upon the quality and quantity

of evidence presented by the defense. . . . [Doing so] does not necessarily suggest that the burden of proof rests with the defense." Gregory, 158 Wn.2d at 860.

Martinez-Zuniga cites heavily to State v. Anderson, 153 Wn. App. 417, 431, 220 P.3d 1273 (2009) to further his argument on this issue. The prosecutor in Anderson argued that "beyond a reasonable doubt" is the same standard applied in choosing to, for instance, have elective surgery: "[you] might get a second opinion. You might be worried, do I really need it? If you go ahead and do it, you were convinced beyond a reasonable doubt." Anderson, 153 Wn. App. at 425. This was improper. Anderson, 153 Wn. App. at 431.

Such downplaying of the burden of proof did not occur here. Because evidence at trial consisted almost entirely of the opposing testimony of M.M. and Martinez-Zuniga, both the prosecutor's and the defense counsel's closing arguments focused on issues of credibility. Several of the prosecutor's statements are at issue:

> [A]s the child in this case, [M.M.] . . . was the only eye witness to what her older stepbrother did to her. So don't make no mistake about it, don't get distracted. If you listen to [M.M.] and you believed her, that is enough in this case to find the defendant guilty.

And:

> These were the things that stood out to [M.M.]. Do you doubt that [M.M.] had a birthday party with the piñata and the cake? Because she couldn't tell you any more details about that party of who was there, who all participated in that birthday party?
>
> The answer should be no. And if you believe that [M.M.] had this 7th birthday party with the piñata and cake, you can also say you believe her when she tells you about the rape and sexual abuse she suffered at the hands of Eduardo, the defendant.

12

And, at the very end of the argument:

> If you believe [M.M.] when she had a 7th birthday party, then you can say that you believed her when she told you about the sexual abuse she suffered at the hands of the defendant.

> And if you believe her when she talks about the sexual abuse, then you can find the defendant guilty. Thank you.

These were not misstatements of the burden of proof, but instead arguments on how to interpret testimony where credibility is at issue. Even when taken alone, out of context, they are not comments on the burden of proof. Each comment stresses that the jury "can" take M.M.'s comments as proof rather than urging that the jury was obligated to. The prosecutor's argument focused on the sufficiency of her testimony to establish guilt. It did not assert the existence of any sort of necessary connection between belief in her testimony about her birthday and a guilty verdict.

In context, the purpose behind and meaning of the comments is even clearer. By analogizing between her testimony about her seventh birthday and her abuse, the prosecutor was rebutting defense counsel's arguments that "inconsistencies" in M.M.'s testimony weakened her credibility. The prosecutor reframed them, instead, as natural complications that arise when relying on testimony about relatively distant events in the life of a child.

Furthermore, the court instructed the jury that it was the sole determiner of credibility. And though the defense did not object to the challenged comments, counsel for Martinez-Zuniga did address the prosecutor's analogy between M.M.'s birthday party testimony and abuse testimony in his closing argument.

13

The comments were not statements on, much less misstatements of, the burden of proof. The prosecutor was making arguments about the quality of the evidence presented to the jury and responding to the defense's attempts to impeach it. There was no error.

4. Opinion Testimony

Martinez-Zuniga contends that J.M.'s testimony about believing his sister was improper opinion testimony constituting manifest error. He asserts that the admission of the opinion testimony alone constitutes manifested error, but that the prosecutor also committed misconduct by asking questions potentially intended to elicit the testimony. While we agree that the testimony was improper, we disagree that it, or the questions that gave rise to it, constitute manifest error.

Witness testimony discussing belief in the statements of other witnesses is impermissible because it "invades the province of the jury as the fact finder in a trial." State v. Demery, 144 Wn.2d 753, 764, 30 P.3d 1278 (2001). Generally, "[w]hether testimony constitutes an impermissible opinion about the defendant's guilt depends on the circumstances of the case, including (1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact." State v. Hudson, 150 Wn. App. 646, 653, 208 P.3d 1236 (2009). Martinez-Zuniga cites to State v. Johnson for the notion that opinion testimony on the truthfulness of testimony from family members carries special prejudicial weight. 152 Wn. App. 924, 219 P.3d 958 (2009). In Johnson, the relevant opinion testimony comprised out-of-court statements from the defendant's wife that she believed the victim's

14

allegations because of specific descriptions of the defendant's genitals and masturbatory habits. Johnson, 152 Wn. App. at 933.

Here, no disagreement exists about whether the statement was proper or admissible: it was neither. The testimony at issue is that of J.M., the first person M.M. told about the abuse, who was 11 years old at the time. During direct examination, the following exchange occurred in which J.M. expressed his belief in the veracity of M.M.'s accusations:

Q [Prosecutor]: Okay. And so you mentioned that with that, when you heard that, what were some thoughts going through your head when you were listening to this?

A: I was really confused at first. I, I was like, did he really do that. And then she started getting emotional. And that's when I started to believe her.

This violated a ruling *in limine* prohibiting "any witness from testifying that they believed M.M." Nonetheless, the defense did not object to this testimony. Martinez-Zuniga suggests that its sheer existence constitutes constitutional error, arguing only in the alternative that it is prosecutorial misconduct. Regardless of the legal theory, we undertake the same manifest error analysis concerning whether the testimony was prejudicial.

The requisite prejudice does not exist here to demonstrate manifest error, and Johnson is distinguishable. That M.M.'s older brother, who later referred her to their older sister, believed her accusations is hardly surprising and does not carry such weight as to affect the outcome of the trial. It is extremely unlikely that the jury extended J.M., who was 13 years old when testifying and 11 years old during the events described, a similar weight of credibility as the jury in Johnson

did the defendant's wife, whose testimony was particularly forceful because of her access to extremely private information about Johnson. We find no manifest error.

### Ineffective Assistance of Counsel

Martinez-Zuniga, in addition to errors assigned above, contends that defense counsel's failure to object in each instance constituted ineffective assistance of counsel. Because objectively reasonable tactical decisions could support his attorney's decision not to object, we do not find that his assistance was ineffective.

Defendants have a right to effective representation. State v. McFarland, 127 Wn.2d 322, 335-36, 899 P.2d 1251 (1995); Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate ineffective assistance, a defendant must show (1) "defense counsel's representation . . . fell below an objective standard of reasonableness based on consideration of all the circumstances and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.,* there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." McFarland, 127 Wn.2d at 334-35.

Courts engage in a strong presumption that representation was effective. State v. Brett, 126 Wn.2d 136, 198, 892 P.2d 29 (1995). That presumption may be overridden where there is an "absence of 'legitimate strategic or tactical reasons supporting the challenged conduct by counsel.' " State v. Crawford, 159 Wn.2d 86, 98, 147 P.3d 1288 (2006) (quoting McFarland, 127 Wn.2d at 336).

Defense counsel often " 'engages in . . . legitimate trial tactic[s] when forgoing an objection in circumstances when counsel wishes to avoid highlighting certain evidence.' " State v. Vazquez, 198 Wn.2d 239, 248, 494 P.3d 424, 431 (2021) (alterations in original) (quoting State v. Crow, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019)).  Failure to object where that objection would not have been sustained is not ineffective assistance of counsel.  State v. Johnston, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007).

First, Martinez-Zuniga's counsel can not be found ineffective for failing to object when an objection would not have been sustained.  Since the prosecutor did not comment on Martinez-Zuniga's right to remain silent or misstate the burden of proof, no objection could have been sustained regarding those statements.  Counsel was therefore not ineffective in not objecting to them.

Second, counsel was not ineffective in not objecting to the prosecutor's emotional appeal because the failure to object is explainable by legitimate strategic and tactical reasoning.[4]  The emotionally charged nature of this case is self-evident.  The jury was acutely aware of the severity of the charges, had sat through weeks of testimony from M.M.'s parents, siblings, and numerous experts, and had watched M.M. tell her own story both on the stand and through the video of her forensic interview.  Where the facts underlying the prosecutor's misconduct-laden emotional appeal are so well known, defense counsel faced a

---

[4] Martinez-Zuniga does not address this matter in the body of his brief. We briefly discuss it here even though we are not required to consider assignments of error unsupported by argument or authority.  Talps v. Arreola, 83 Wn.2d 655, 657, 521 P.2d 206 (1974).

choice between the risk of calling even greater attention to them through an objection or aiming to rebut the prosecutor's improper argument in his own closing argument. The latter approach is a legitimate and reasonable tactic under the circumstances.

Finally, Martinez-Zuniga asserts that counsel was ineffective in failing to object to J.M.'s opinion testimony. Though the testimony was improper and any objection should have been sustained, J.M.'s comments were fleeting, unlikely to carry much weight in the eyes of the jury, and wholly unsurprising—it was reasonable in context to already assume his belief in his sister's statements, especially since he passed them along. Defense counsel's decision not to object was supportable by the desire not to call undue attention to the impropriety. This was a legitimate and reasonable tactical decision.

Martinez-Zuniga did not receive ineffective assistance of counsel.

<u>Cumulative Error</u>

Finally, Martinez-Zuniga contends that even if any one of these errors does not require reversal, cumulative error does. Cumulative error exists "when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." <u>State v. Greiff</u>, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). The defendant must show that the combined prejudice of the errors affected the outcome of the trial. <u>In re Pers. Restraint of Cross</u>, 180 Wn.2d 664, 690-91, 327 P.3d 660 (2014), <u>abrogated on other grounds by Gregory</u>, 192 Wn.2d at 17. J.M.'s opinion testimony was clearly improper but, because his opinion could be assumed in context, no

prejudice arises from it.  Similarly, though the prosecutor's emotional appeal during closing argument may have been misconduct, any potential prejudice is minimal.  Taken together, even the combined prejudice of these errors did not affect the outcome of the trial and does not require reversal.

We affirm.

_Smith, A.C.J._

WE CONCUR:

_Brunner, J_        _Verellen, J_